[No. 15249.    In Bank.—September 24, 1894.]

## HATTIE McLAUGHLIN, RESPONDENT, *v.* LOTTIE McLAUGHLIN ET AL., APPELLANTS.

MUTUAL BENEFIT SOCIETY—CHANGE OF BENEFICIARY.—When the laws of a
Mutual Benefit Society prescribe a particular mode of changing the
beneficiary such mode must be followed, and no change can be made in
any other manner.

ID.—ATTEMPTED CHANGE WHEN UNAVAILING.—Where the laws of a Mu-
tual Benefit Society provide for the change of the beneficiary only by the
surrender of the old and the issuance of a new benefit certificate, and
the insured fails to pursue such course or to make official application for
the change, he having the power to do so, no change can be effected by
his merely oral declarations of intention, or by the delivery of the certifi-
cate to the person whom he wishes to become his new beneficiary.

ID.—PAYMENT OF BENEFIT MONEY INTO COURT.—The willingness of the
society, after the death of the insured, to pay into court the money called
for by the certificate, to be disposed of as the court might direct, can-
not affect the rights of the beneficiary.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*Marcus Rosenthal*, for Appellants.

No change of the beneficiary was effected. (*Elliott* v. *Whedbee*, 94 N. C. 115; *Holland* v. *Taylor*, 111 Ind. 121; *Supreme Lodge, K. of H.*, v. *Nairn*, 60 Mich. 44; *Wendt* v. *Iowa Legion of Honor*, 72 Iowa, 682; *Hellenberg* v. *District 1, I. O. B. B.*, 94 N. Y. 581; *Maryland Mut. Ben. Soc.* v. *Clendinen*, 44 Md. 429; 22 Am. Rep. 52; *Olmstead* v. *Masonic Mut. Ben. Soc.*, 37 Kan. 93; *Stephenson* v. *Stephenson*, 64 Iowa, 534; *Coleman* v. *Supreme Lodge, K. of H.*, 18 Mo. App. 189.)

*Jones & O'Donnell*, for Respondent.

Under the facts of this case the attempt to change the beneficiary, although not done in the manner required by the by-laws, should be given effect. (*Isgrigg* v. *Schooley*, 125 Ind. 94; *Splawn* v. *Chew*, 60 Tex. 532; *Kepler* v. *Supreme Lodge, K. of H.*, 45 Hun, 274; *Manning* v. *Ancient Order U. W.*, 86 Ky. 136; 9 Am. St. Rep. 270; *Catholic Mut. Ben. Assn.* v. *Priest*, 46 Mich. 429; *Nally* v. *Nally*, 74 Ga. 669; 58 Am. Rep. 458; *National Am. Assn.* v. *Kirgin*, 28 Mo. App. 80; Bacon on Benefit Societies, secs. 308, 310; *Grand Lodge* v. *Child*, 70 Mich. 163; *Supreme Conclave, Royal Adelphia*, v. *Cappella*, 41 Fed. Rep. 1; *Luhrs* v. *Luhrs*, 123 N. Y. 367; 20 Am. St. Rep. 754; *Hirschl* v. *Clark*, 81 Iowa, 200.)

BELCHER, C.—In July, 1886, Alexander McLaughlin became a member of Mission Council of the Order of Chosen Friends, a corporation organized and existing under the laws of the state of Indiana, and received a relief fund certificate, stating that he had become a member of the order "and entitled to all the rights and privileges of membership, and a benefit of not exceed-

ing two thousand dollars from the relief fund of said
order, which sum shall in case of death be paid to the
nephews and nieces, John, Robert, Jennie, and Lottie
McLaughlin, children of Armor McLaughlin, in the
manner and subject to the conditions set forth in the
laws governing said relief fund and in the application
for membership." Afterwards Mission Council was dis-
solved, and he became a member of Home Council of
the same order, and continued to be a member thereof,
in good standing, until he died, on March 28, 1890. On
February 18, 1890, he and the plaintiff intermarried,
and thereafter were husband and wife up to the time of
his death.

In August, 1890, the plaintiff commenced this action
against the four beneficiaries named in the relief fund
certificate, their father, Armor McLaughlin, and the
Supreme and Home Councils of the Order of Chosen
Friends, alleging in her complaint facts which it was
claimed entitled her to the two thousand dollars to be
paid on the death of her husband.

Before the trial of the action all the parties thereto
entered into a written stipulation whereby the said
councils disclaimed any and all interest or right in or
to the two thousand dollars in controversy, and whereby
it was agreed that the said sum of money should be
deposited in a certain savings bank, in the names of
the attorneys of the parties, in trust for the person or
persons who should be found entitled thereto by the
final judgment to be rendered in the action. And in
pursuance of this stipulation the money was deposited
as agreed, and the action was then dismissed as to the
defendant councils.

After trial the court found the facts to be substan-
tially as alleged in the complaint, and as conclusions of
law that the plaintiff was entitled to the said money.
Judgment was accordingly entered in her favor, from
which, and from an order denying a new trial, the
defendants McLaughlins appeal.

Appellants contend that the decision was not justified

by the evidence, and was against law, and also that several errors of law were committed by the court in its rulings upon the admission of evidence.

The constitution and laws of the order contain the following provisions:

"Sec. 111. There shall be connected with this order a relief fund, from which each beneficiary member, the person or persons designated by said member related to or dependent upon him or her, or the legal representatives of such person or persons, shall be entitled, under the prescribed regulations and conditions, to draw a sum not exceeding the amount named in his or her certificate, as hereinafter specified. During his or her life each member shall have full control of his or her interest in this fund," etc.

"Sec. 162. Each member shall enter upon his application the name or names of the person or persons related to him or her to whom he or she desires the benefit to be paid in case of death, subject, however, to such future disposal of the benefit as the member may thereafter direct, not in conflict with section 111, and the same shall be entered in the relief fund certificate according to such direction."

"Sec. 172. A member in good standing may, at any time, surrender his or her relief fund certificate, and a new certificate shall then be issued, payable to such person or persons related to or dependent upon him or her, as the member may direct, upon payment of the certificate fee ($1)."

To establish the plaintiff's right to the money as against the beneficiaries named in the certificate evidence was introduced on her behalf showing the following facts:

C. L. Stone was the secretary of Mission Council when Alexander McLaughlin became a member thereof, and continued to be its secretary until it ceased to exist, and as such secretary he issued to McLaughlin his relief fund certificate. They were intimate friends, and in 1888 both became members of Home Council at the

same time. McLaughlin never attended any of the meetings of either council after his initiation. Stone was never secretary of the new council, but he paid all of McLaughlin's dues, and from time to time furnished him with receipts therefor signed by its secretary, who was a Mrs. Carroll.

About a week after plaintiff and McLaughlin were married he gave her his certificate, and she put it away, and thereafter retained possession of it until after his death. At the time of handing the certificate to her he told her he was going out that day to see Mr. Stone and have it changed to her name. He returned in the evening and told her he had not been able to find Mr. Stone. On March 7th he saw Stone and told him he desired to have the certificate changed and made payable to his wife, and thereupon they agreed to meet at the next regular meeting of the Home Council, to be held on March 11th, and have the change made. Stone then told him that it would be necessary to write out an application to the secretary and to surrender the certificate. He told his wife of the appointment made with Stone, and together they went to the meeting agreed upon, but Stone was not there, and nothing was done. Three days later he was taken sick with pneumonia, from which sickness he never recovered. On March 23d plaintiff sent word to Armor McLaughlin telling him of her husband's condition. Armor called that evening, and finding his brother very sick advised him to transfer all his property to his wife. Alexander then asked Armor to have the certificate changed and made payable to his wife, and asked her to get the certificate, which she did. Armor read it over and then handed it back, saying, "I will attend to it to-morrow." As Armor was leaving the house that evening he said to one Webster, a brother-in-law of the plaintiff, that he would go the first thing the next morning and have the certificate changed, and that in case he could not get it changed or his brother should die he would draw the money in the children's names and turn it over to the

plaintiff. Armor called again the next day, and in his presence Alexander then transferred to his wife all his property, consisting of a lot in Seattle and two thousand five hundred dollars money on deposit in a bank, and during that day Armor stated to said Webster that he had sent one Hansen with twenty-five dollars to see the secretary and have it all straightened out. And in the afternoon of the same day Alexander called Webster to his bedside and asked him if every thing had been straightened, and mentioned the certificate, and Webster, relying on what Armor had told him, said it had; and he said it was all right. Plaintiff first learned that she had not been substituted as beneficiary about a month after her husband's death. Meantime plaintiff had frequently asked Armor about the certificate, but he gave no definite answer, and said he did n't know any thing about the laws of the society, but any way she would not hear any thing for sixty or ninety days.

It is urged on behalf of respondent that the laws of mutual benefit associations, providing how a change of beneficiaries may be made, are for the protection and benefit of the association alone, and that when in this case the councils entered into the stipulation above referred to and thereby disclaimed any right to the money in controversy they in effect waived, as they might do, a compliance with their laws by McLaughlin, and hence that appellants cannot invoke them for their benefit.

It is further urged that, since McLaughlin expressed a desire to have the certificate changed by substituting respondent as beneficiary therein, and took the steps indicated to accomplish that end, it should be regarded, under the rule that equity will consider that done which ought to be done, as in fact changed so as to entitle respondent to the money.

We do not regard the stipulation as in any way material to a determination of the case. It shows only that the councils made no claim to the money, and were willing to pay it into court, and let it go to the party or parties who might be adjudged entitled to it. It is true

that during his life McLaughlin had full control over his interest in the fund, and had a right at any time to have his certificate changed by substituting a new beneficiary. And while he lived the beneficiaries named in the certificate had no vested interest in the money to be paid on his death. But when he died the right to the money did vest either in the respondent or appellants, and the councils had thereafter no power by stipulation or otherwise to change or affect that right.

The question, then, is, did the expressed desire of McLaughlin to have the respondent substituted as beneficiary and the steps taken to that end have the effect to make the change, when the certificate was not surrendered but remained all the time in respondent's possession, and no application was made to the secretary or other officer to have it changed?

This is the first time that a question of this character has ever been presented to this court for decision, but there have been numerous decisions in other states directly bearing upon it. The general and prevailing rule, as shown by these decisions, is that when the laws of a benefit society prescribe a mode of changing the beneficiary the mode prescribed must be followed, and no change can be made in any other manner. (See Niblack on Mutual Benefit Societies, sec. 221 et seq. and cases cited; also Bacon on Benefit Societies, sec. 307, and cases cited.)

In *Wendt* v. *Iowa Legion of Honor,* 72 Iowa, 682, it was held that, as the provisions of the constitution pertaining to the subject were a part of the contract of insurance, the insured could not make any change of beneficiaries, except by compliance therewith, and also that expressed intentions and oral declarations can have no effect to change beneficiaries. And in that case, as in this, it was claimed that as the order was willing to pay the money into court, to be disposed of as should be directed by the final judgment, it had waived a compliance with its laws. The court said: "But it is said this

is a matter to which the defendant can only object. We think differently. While the heirs during the life of the assured had no right in the policy, their interest being nothing more than in expectancy, upon his death they acquired rights which cannot be cut off except in the manner prescribed by the contract. If that was not done the defendant could not, even by positive consent after their rights had attached, by act or word do any thing to defeat these rights. It is controlled by the contract as it was at the death of the assured."

In *Supreme Conclave, Royal Adelphia*, v. *Cappella*, 41 Fed. Rep. 1, the general rule is declared as follows: "In making such change of beneficiary, however, the insured is bound to do it in the manner pointed out by the policy and the by-laws of the association, and any material deviation from this course will invalidate the transfer."

It is said in that case, however, that the general rule is subject to three exceptions: 1. If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary, has issued a new certificate, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. 2. If it be beyond the power of the insured to comply literally with the regulations a court of equity will treat the change as having been legally made. 3. If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but before the new certificate is actually issued he dies, a court of equity will treat such certificate as having been issued.

The same exceptions are recognized in some of the other cases, but it is evident that this case does not come within either of them. Here the council did not waive a compliance with its laws, and issue a new certificate, and it was not beyond the power of the insured to comply literally therewith. Nor did the insured pursue the course pointed out by the laws and do all in

his power to have the change made. He might have had the certificate surrendered as required, but this was never done or attempted to be done, and no application to the secretary for a change was made.

We conclude, therefore, that the case falls within the general rule, and that the beneficiaries named in the certificate were entitled to the money, and the court below should have so determined.

We advise that the judgment and order be reversed, and the cause remanded, with directions to the court below to enter judgment in favor of the appellants.

SEARLS, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed, and the cause remanded, with directions to the court below to enter judgment in favor of the appellants.

DE HAVEN, J.,    McFARLAND, J.,<br>VAN FLEET, J.,    HARRISON, J.