Decided 18 December, 1899.

**INDEPENDENT FORESTERS *v.* KELIHER.**

[59 Pac. 324, 59 Pac. 1109, 60 Pac. 563.]

| 36 | 501 |
| 42 | 70 |
| 36 | 501 |
| d44 | 519 |

1. INSURANCE—VESTED RIGHTS ON DEATH OF INSURED.—A life insurance association cannot affect the rights of a beneficiary by any act on its part after the death of the insured.

2. BENEVOLENT ASSOCIATION—METHOD OF CHANGING BENEFICIARY.—A member of a fraternal insurance order desiring to change the beneficiary named in his certificate must substantially comply with the rules of the order regulating that subject or the change will not become effective; thus, where the laws of an order required a member who wished to change his beneficiary to file a written petition with his local branch stating certain facts relating to the matter, and directed the local secretary to send the petition and the certificate to the grand secretary who should issue a new one, an alteration by the local secretary of the name of the beneficiary in the original certificate is ineffectual for any purpose.

3. CHANGING BENEFICIARY—NECESSITY OF COMPLYING WITH RULES.—An insured in a fraternal insurance association cannot change the beneficiary in his certificate except in the manner pointed out in the rules of such association, even though the latter may not object.

4. WAIVER OF COMPLIANCE WITH RULES.—The failure of a grand secretary to supply local secretaries of an order with proper blank forms of petition for change of beneficiary, or the fact that the local branch failed to meet on a regular day when such a petition might have been considered, does not constitute a waiver of the requirements of the order as to such changes where the member made no attempt whatever to meet the requirements, or to file any petition whatever.

5. IDEM.—The ignorance of the officers of a local lodge of a mutual benefit association as to their duties in making a change in the beneficiary, and the failure of the order to furnish a blank form of application for such change, will not excuse the assured from a substantial compliance with the rules of the order, so as to give effect to an attempted change of beneficiary, which was not made in accordance with such rules.

6. WAIVER OF RIGHTS BY NOT APPEALING.—Parties to an appeal from a decree adverse to them, who neither appeared by brief or counsel in the appellate

court to question the correctness of the decree, or to contest the claims of others to a fund determined thereby, are not entitled, after a decision, to a resubmission of the case to the trial court to enable them to relitigate their claims to such fund.

7. RESTITUTION—INTEREST PENDING APPEAL.—Where a fund has been turned over to claimants thereof under a decree of a trial court, they should, on reversal of such decree, be charged with interest received by them on such funds pending the determination of the appeal, and credited with the expenses of the management of the fund.

From Multnomah : LOYAL B. STEARNS, Judge.

This is a bill of interpleader, filed by the Independent Order of Foresters, a benevolent association, for the determination of conflicting claims to a beneficiary certificate issued to one Keliher, a member of a subordinate court of the order located at Portland, who died September 2, 1895. The certificate in question was issued on the second day of May, 1895, for the sum of $3,000, payable, by a direction thereon, signed by Keliher, to his wife, Margaret E. Keliher, subject to the laws of the order, which contain the following provisions: "Sec. 251. (1) A member may at any time, while in good standing, except as hereinafter provided, change his beneficiary or beneficiaries in the following manner, to wit : (a) By filing a written petition with his court, setting forth fully and clearly the changes he desires to make ; (b) by paying a fee of fifty cents ; (c) by surrendering to his court the old benefit certificate ; (d) by furnishing satisfactory evidence that he, and not the beneficiary or beneficiaries, has paid the assessment on account of such certificate ; (e) whereupon the court shall cause such petition and the benefit certificate, together with the sum of fifty cents, to be transmitted to the supreme secretary under the signature of the chief ranger and recording secretary and the seal of the court. (f) On receipt of the old benefit certificate and the fee, together with the petition, as above provided, if approved by the supreme chief ranger or ex-

ecutive council, the supreme secretary shall issue a new benefit certificate, with the desired changes incorporated therein.   (2) If a member desires to change his beneficiary or beneficiaries, and the benefit certificate is in the custody of a person other than the member, and such custodian neglects or refuses to deliver up such certificate, the member shall make a statutory declaration or an affidavit setting forth the facts of the case, whereupon the supreme secretary shall issue a second benefit certificate to such brother, with the required change ; provided all other requirements of the constitution and laws of the order have been complied with.   (3) Whenever a second benefit certificate is issued the first one shall, *ipso facto*, become void.''  Section 260 is as follows : ''No benefit claim or benefit certificate shall be assigned to others as collateral security for debt, nor shall the beneficiary or beneficiaries be changed except in the manner provided for in the constitution and laws of the order.''

In July, 1895, Keliher concluded to change the beneficiary in his certificate from his wife to his four children. He consulted some of the principal officers of the order in Portland about the matter, and was by them referred to Mr. G. W. Povey, recording secretary of the local court. About the first of August he called at Mr. Povey's place of business, but not finding him, left the benefit certificate with D. L. Povey, for his brother, the recording secretary. What took place at that time is told by Mr. Povey, as follows :   ''He [Keliher] produced the paper [benefit certificate] , and stated he wished to change the name of the beneficiary in this paper, and asked me if I would request my brother to have it changed from his wife to his four children, and I told him I could tell my brother that, but I would rather he would write it down, and I would give him the message.   I handed him a slip of paper and pencil, and he wrote down the names of the parties he wished

it changed to, and said, 'Tell them.' He then passed the paper to me, and he says, 'Will you have him make it out so it will be equally divided?' I says, 'No; I would rather you would put down the amount opposite each name that you wished carried in the policy or changed;' and he did so. I had him address it to my brother as recording secretary of his lodge, and then I had him state underneath, 'Please change this policy from my wife, Margaret Keliher,' or whatever the name was, 'to my four children,' and then down below there the names, and opposite each name the amount of insurance that he wished, and sign it.'' This memorandum and the benefit certificate were then laid on the desk of the recording secretary, and his attention called to them by his brother upon his return to the office. Nothing, however, was done in the matter until two or three weeks later, when Mr. Keliher again called, whereupon Mr. Povey, the recording secretary, took the benefit certificate, and, in the presence of Keliher, erased the name of Margaret E. Keliher, and inserted in lieu thereof the names of his four children, and the figures and word, ''$750 each.'' He thereupon destroyed the memorandum, because, as he says, it was intended only as a statement of the names and ages of the children and of the changes desired, and returned the certificate to Mr. Keliher, who took it away with him. At the time, Mr. Keliher inquired if there was any fee to be paid, and Mr. Povey told him that, if there was, he would see that it was all right. No meeting of the local court was held thereafter during the life of Keliher, although, under its bylaws, one should have been held; and no further action was taken in the matter until after his death, when Mr. Povey, the recording secretary, made out an application for a change of beneficiary, and presented it to the local court, which approved the same, and transmitted it to the supreme secretary of the order, who declined to make the

change of beneficiaries, or issue a new policy, but caused the money to be paid into court, that the rights of the several claimants might be judicially determined. The court below held that the children were entitled to the fund, and the widow appeals.    Reversed.

For Mrs. Keliher and H. E. Edwards, an attaching creditor of the fund, there was a brief over the names of *Martin L. Pipes, Michael J. MacMahon, Victor K. Strode* and *Henry E. McGinn*, with an oral argument by *Messrs. Pipes* and *Strode*.

For the minor children and their guardian there was a brief over the names of *Michael G. Munly* and *John B. Cleland*, with an oral argument by *Mr. Munly* and *Mr. William A. Cleland*.

Mr. Justice Bean, after stating the facts, delivered the opinion of the court.

1.   The rights of the parties to the fund in controversy must be determined by the condition of affairs at the time of Keliher's death. The right of a legally designated beneficiary under a certificate of the character now under consideration becomes vested upon the death of the member, and no subsequent action of the lodge or order can change or affect his rights: Bacon, Ben. Soc. § 255; *McLaughlin* v. *McLaughlin*, 104 Cal. 171 (43 Am. St. Rep. 83, 37 Pac. 865); *Ireland* v. *Ireland*, 42 Hun, 212; *Keener* v. *Grand Lodge*, 38 Mo. App. 543.

2.   The only question to be determined, then, is whether Keliher complied with the rules of the order so as to effect the change of beneficiaries. If he did, then the guardians of his children are entitled to the fund; if not, Mrs. Keliher, his widow, is entitled to it, and the decree of the court should be reversed. It is the generally accepted

doctrine in ordinary life insurance that, unless the power of divestiture is reserved, the issue of the policy confers immediately a vested right in the beneficiary, which no subsequent act of either the insured or insurer, or both together, can impair without his consent. But it is entirely settled that under a benefit certificate issued by a benevolent association, such as the one now under consideration, the beneficiary therein usually has no vested interest until the death of the member, and up to that time the member may change the beneficiary without his consent: Bacon, Ben. Soc. § 306. But it is equally as well settled that such power must be executed in the manner pointed out by the policy and the bylaws and rules of the order, and any material deviation from the course prescribed will invalidate the transfer : 3 Am. & Eng. Enc. Law (2 ed.), 993. Thus, where the rules provided that a member might at any time surrender his relief-fund certificate, and a new one would be issued, payable to such person as he might direct, it was held that, where a member, without the knowledge of the association, inserted in the certificate, after the name of the originally designated beneficiary, the words, "and my wife, Mary," thus seeking to make her a joint beneficiary, and then delivered the certificate to his wife, the attempted change was invalid, and vested no interest in the wife : *Thomas* v. *Thomas*, 131 N. Y. 205 (27 Am. St. Rep. 582, 30 N. E. 61). So, too, under a similar provision, it was held that an indorsement by a member on a benefit certificate of an order to pay the amount to a person other than the beneficiary named will not entitle the payee to receive it from the association : *Jinks* v. *Banner Lodge*, 139 Pa. St. 414 (21 Atl. 4). And again, under a like requirement, where a member, desiring to change his beneficiary, gave a written notice thereof to the officers of the subordinate lodge, saying that he surrendered the former certificate,

but did not do so, it was held that the original beneficiary was entitled to the fund, because the adoption of a particular method of changing a benefit certificate under the powers and within the limitations of the charter of the benevolent society is exclusive of all other methods : *Coleman* v. *Supreme Lodge*, 18 Mo. App. 189. See, also, *Holland* v. *Taylor*, 111 Ind. 121 (12 N. E. 116); *Harman* v. *Lewis* (C. C.) 24 Fed. 97 ; *McLaughlin* v. *McLaughlin*, 104 Cal. 171 (43 Am. St. Rep. 83, 37 Pac. 865); *McCarthy* v. *Supreme Lodge*, 153 Mass. 314 (25 Am. St. Rep. 637, 26 N. E. 806 ; *American Legion of Honor* v. *Smith*, 45 N. J. Eq. 466 (17 Atl. 770).

There are, however, said to be three exceptions to the general rule requiring conformity to the regulations of the association in the matter of a change of beneficiaries, which are thus stated by Mr. Justice BROWN, in *Supreme Conclave* v. *Cappella* (C. C.), 41 Fed. 1 : "(1) If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary, has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. (2) If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made." For example, where the certificate is lost, and cannot be surrendered by the member (*Grand Lodge* v. *Child*, 70 Mich. 163, 38 N. W. 1; *Grand Lodge* v. *Noll*, 90 Mich. 37, 30 Am. St. Rep. 419, 51 N. W. 268, 15 L. R. A. 350); or where it is retained by the original beneficiary, who refuses to surrender or deliver it up, as in *Supreme Conclave* v. *Cappella*, 41 Fed. 1, and *Grand Lodge* v. *Kohler*, 106 Mich. 121 (63 N.W. 897); *Isgrigg* v. *Schooley*, 125 Ind. 94 (25 N.E. 151.) "(3) If the assured has pursued the course pointed out by the laws of the association, and has done all in his

power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued :" *National Am. Assoc.* v. *Kirgin*, 28 Mo. App. 80 ; *Luhrs* v. *Luhrs*, 123 N. Y. 367 (25 N. E. 388, 9 L. R. A. 534) ; *Heydorf* v. *Conrack*, 7 Kan. App. 202 (52 Pac. 700). But we think the case under consideration does not fall within either of these exceptions. Manifestly not within the first, because the old certificate was never surrendered up, and a new one issued. It does not come within the second exception, because it was not beyond the power of the insured to substantially comply with the rules, which were : First, the filing of a written petition setting forth fully and clearly the changes he desired to make ; second, paying a fee of fifty cents ; third, surrendering up his old benefit certificate ; and, fourth, furnishing satisfactory evidence that he, and not the beneficiary, had paid the assessments on account of such certificate.

If it be conceded that his offer to pay the fee to the secretary was a sufficient compliance with the second requirement, and his delivery of the original certificate to that officer for the purpose of having the desired change made was a sufficient compliance with the third, there was clearly no attempt on his part to comply with either the first or the fourth. He did not file, or endeavor to file, a written petition setting forth the changes he desired to make. The only writing was the memorandum prepared at the request of D. L. Povey for the use and information of his brother, the secretary of the lodge, and was destroyed as soon as it accomplished its purpose. The evidence shows—and about this there is no dispute—that it was not designed or intended as a petition to the court, or to be presented to or acted upon by the order. It is argued that, because the rules of the order require all

applications for change in beneficiaries to be made on
blank forms provided by the supreme court, and it had
failed and neglected to furnish the local court in Portland
with such forms, Keliher was not required to make his
petition in any particular form.  This would probably be
a sufficient excuse for not adopting a prescribed form,
but it could be no excuse for not filing a petition of some
kind, stating the changes he desired to make ; so that,
under the evidence in this case, there is no room for the
contention that Keliher complied with the first require-
ment of the order.  Nor did he furnish, or attempt to fur-
nish, any evidence, satisfactory or otherwise, that he, and
not the beneficiary, had paid the assessments on account
of such certificate.  This provision was no doubt inserted
in the rules of this particular order because of the inequi-
table doctrine which seems to prevail, to some extent, at
least, that a member of a benevolent association may
change his beneficiary without his consent, even though
he may have advanced the money to pay the assessments,
and was designed to prevent a member from making such
change, unless he could make it appear that he himself,
and not the beneficiary, had been paying the assessments.
No such showing was made, or attempted to be made, in
this case, and, indeed, it probably could not have been,
because it is in evidence that Mrs. Keliher, the benefi-
ciary named in the certificate, paid a part, at least, of
the assessments.  We conclude, therefore, that because
Keliher did not comply with the rules of the order gov-
erning the matter of changing beneficiaries, either in sub-
stance or in form, his attempted change was invalid, and
the fund now in controversy belongs to his wife, the ben-
eficiary named in the certificate.

   3.   In reaching this conclusion we have not overlooked
the cases of *Manning* v. *A. O. U. W.* 86 Ky. 136 (9 Am.
St. Rep. 270, 5 S. W. 385), and *Splawn* v. *Chew*, 60 Tex.

532, holding, in effect, that the bylaws of a benevolent association providing the mode of changing the beneficiary named in a certificate issued by it are directory only, and for the benefit of the society, and, if it does not object to an attempted change, the original beneficiary cannot.   These cases are manifestly not in harmony with the great weight of authority on the question, and do not, in our opinion, give effect to the terms and conditions of the contract as made.   In case of an insurance contract made by a benevolent association the bylaws, rules, and regulations of the order, as well as the powers inherent in the very nature of such an association, become a part of the contract, and are as binding upon the parties as the provisions of any other contract.   By becoming a member, and accepting a certificate, the party obligates himself to comply with the rules and requirements of the order, and agrees that payment shall be made, in case of his death, to the beneficiary named in his certificate, unless a change is made in the mode provided by the laws of the order.   For many purposes, mutual benefit associations are insurance companies, and the certificates issued by them are regarded and treated as policies of insurance, and governed by the rules applicable to such contracts.   There are, however, some well recognized and important differences, and the principal one is the right of the assured to change the beneficiary without his consent. But this right exists because reserved in the contract, and inherent in the very nature and character of the association.   And, as said by the Supreme Court of Indiana in the case of *Holland* v. *Taylor*, 111 Ind. 121, 126 (12 N. E. 118) :  ''As in either case the rights of the beneficiary are dependent upon and fixed by the contract between the assured and the company or association, there seems to be no reason why the assured should have any greater power to change the beneficiary in one case than in the other,

except as that power may be inherent in the nature of the association, or is reserved to him by the constitution, or by the laws of the association, or by the terms of the certificate. \* \* \* By virtue of the bylaws and the certificate, which, as we have seen, constituted the contract between him and the Royal Arcanum, he had power to change the beneficiary. That same contract fixed the mode and manner in which that change might be made; and we think that, taking the bylaws and certificate together, the mode and manner of changing the beneficiary was fixed as definitely, and was as binding upon the assured, as was the right to make such change binding upon the association and the beneficiary. In other words, under the contract the assured had a right to change the beneficiary, provided he made the change in the manner provided in the contract.''

So, in *Stephenson* v. *Stephenson*, 64 Iowa, 534 (21 N. W. 19), the court says: ''The contract between the association and Robert Stephenson was that the former should pay the insurance to the persons named in the certificate of membership, unless he should change the name of the beneficiaries; and the manner in which this should be done formed a part of the contract of insurance. \* \* \* Until the contemplated change was made on the books of the association, and a new certificate issued, the obligation to pay the beneficiary whose name appeared on the books of the association continued to exist. \* \* \* Counsel for plaintiffs insist that, where a power is reserved, and no mode of executing it is provided, it may be executed by will. Possibly, this is so; but, whether so or not, it will be conceded for the purpose of this case. One difficulty in the application of such a rule to this case is that a mode of executing the reserved power is provided in the contract, and it is conceded that such a mode was not adopted. It was perfectly competent for the parties

to contract as they did, and the mode of executing the reserved power provided in the contract cannot be regarded as an idle ceremony, because substantially a new contract was made upon its being complied with, and thereby all doubt upon the part of the association as to who was the beneficiary was removed. Because such mode was not adopted in this case creates the doubt we are called upon to solve. We therefore think the mode agreed upon in the contract, whereby the name of the beneficiary should be changed, was made a matter of substance, and should be complied with.''

4. It is argued that, although it is the rule that a change of beneficiary must be made in the manner prescribed by the laws of the society, it is equally well settled that the society may waive compliance with the required form. But with this doctrine we have no concern in the present case, because there is no evidence that the society, either directly or indirectly, waived compliance with any of the requirements of the order. Neither Mr. G. W. Povey, the recording secretary, nor the other officers of the order in Portland whom Mr. Keliher consulted, had any authority to do so. They were but subordinate officers, whose duties were prescribed by the constitution and bylaws, of which Mr. Keliher had notice, not only because he was a member, but on account of the provisions of his certificate, and the further fact that when he joined the order he was furnished with a copy of its constitution and bylaws, and required to subscribe thereto.

It is claimed that the failure of the local society to hold the regular meeting, which should have been held, under the bylaws, between the date of the attempted change of the beneficiary by Mr. Keliher and his death, was a waiver of the provision requiring a petition for the change to be presented to the local court. There would probably be some force in this contention if Mr. Keliher had

in fact filed a petition for a change of beneficiary ; but, as we have already seen, he did not, and therefore the failure of the society to hold its regular meeting could in no way have affected his rights. The issue in this case is to be determined on the question as to whether Keliher himself performed the acts required of him, and, as he did not, there is no alternative but to reverse the decree, and award the fund to Mrs. Keliher, the party named in the benefit certificate.                              REVERSED.

Decided 19 February, 1900.

ON MOTION FOR REHEARING.

[ 59 Pac. 1109.]

PER CURIAM. 5. The petition for rehearing in this case is denied. The matters referred to therein did not escape the attention of the court. The ignorance of the officers of the local lodge of their duties, the failure of the installing officer of the society to instruct them therein, and the failure of the order to furnish blank forms for a change of beneficiary, did not relieve Mr. Keliher from a substantial compliance with the rules of the order governing the matter of a change of beneficiaries, of which he had knowledge, because they were expressly made a part of his contract. As said in the original opinion, "The issue in this case is to be determined on the question as to whether Keliher himself performed the acts required of him, and, as he did not, there is no alternative but to reverse the decree, and award the fund to Mrs. Keliher, the party named in the benefit certificate."

REHEARING DENIED.

36 OR.—33.

Decided 26 March, 1900.

On Motion to Modify the Decree.

[60 Pac. 563.]

*Mr. Schuyler C. Spencer,* for the motion.

*Mr. Martin L. Pipes, contra.*

Per Curiam. 6. The application of the respondents Dunning & Campion, and of appellants Sealy, Mason & Company, made since the decision, for an order remanding this suit to the court below, to enable them to relitigate their claims to the fund in controversy, is denied. The decree of the court below was against them, and they have acquiesced therein. Although parties to the appeal, neither appeared in this court, by brief or counsel, to question the correctness of the decree, or to contest the claims of the other appellants. The only parties appearing here as claimants to the fund are the guardians of the minor children of Keliher on the one side and Mrs. Cosgrove and H. E. Edwards on the other. The assignment from Mrs. Keliher to Mrs. Cosgrove is admitted to be valid by the only party to this appeal who has any right to question it, and, as between her and Edwards, there is no contention.

7. In regard to the matter of interest, it appears that after the entry of the decree in the court below, the guardian of James, Mary, and Josephine Keliher received of the fund in controversy $2,157, and the guardian of Catherine Annie Brandes $719, and it is claimed that they ought to be charged with interest thereon. From the showing made, it appears that the guardian of Catherine Annie Brandes has received no interest whatever upon the money paid to her, but that it has remained in the bank upon deposit, awaiting the termination of this appeal; and therefore she ought not

to be charged with interest. The amount received by the guardian of James, Mary, and Josephine Keliher was mingled with the other funds belonging to her wards, and a portion, at least, put out at interest. But it is impossible to tell from the evidence before us what amount of interest has been received by her on account of such fund. Whatever interest she has so received, if any, less the expense incident to the management of the fund, ought to be paid over by her to the successful parties on this appeal. As this cannot be ascertained upon the showing made, it is thought best to refer the question to the court below for determination, and it is so ordered.

MOTION OVERRULED.