### FARLEY et al. v. UNITED STATES et al.

(District Court, D. Oregon. July 16, 1923.)

No. E-8599.

1. **Equity ⬥57—Acts necessary to effect change of beneficiaries.**

Generally the prescribed regulations must be substantially complied with before a change of beneficiaries is effected, but where insured has pursued the course prescribed, and has done all that he can possibly do to change the beneficiary, and a sufficient time has elapsed for the change to have become effective in the usual course of business before his death, a court of equity will consider that done which ought to have been done.

2. **Army and navy ⬥51½, New, vol. 12A Key-No. Series—Attempted change of beneficiary of war risk insurance held effective.**

A soldier, having war risk insurance payable to designated beneficiaries, on his marriage procured the required blank forms for having his wife substituted as beneficiary. These he filled out and took to the proper officer, who made certain changes and corrections in pencil and then attached them to blank forms, which by his direction the soldier signed in his presence, and which the officer retained for the purpose of having them filled out in typewriting, as customary, and then disposed of as required by the regulations. After the soldier's death these

forms could not be found, and apparently nothing further had been done with them; but eventually the bureau recognized the widow as the beneficiary. *Held* that, the soldier having done all that was required by his officers to effect the change of beneficiary, it was properly given effect.

3. **Army and navy** ☞51½, New, vol. 12A Key-No. Series—Government may waive provisions of war risk insurance regulations made for its protection.

The provision of the regulations of the War Risk Insurance Bureau that no change of beneficiary shall be valid unless and until it is recorded in the bureau is for the protection of the government, and may be waived by it.

At Law. Action by Esther Farley and Etta Farley against the United States and Ruth Blair Farley. Judgment for defendants.

Huntington & Wilson, of Portland, Or., for plaintiffs.

Thomas H. Maguire, of Portland, Or., for the United States.

Dey, Hampson & Nelson and Paul P. Farrens, all of Portland, Or., for defendant Farley.

WOLVERTON, District Judge. Kenneth Claire Farley enlisted in the United States army on May 31, 1917, at Portland, Or., and was assigned to active duty July 7th at Camp Lewis, Wash., training camp. He was the adopted son of G. J. and Esther E. Farley. He applied for and was granted war risk insurance in the sum of $10,000, effective November 22, 1917, and designated as his beneficiaries his adoptive mother and sister, in the sum of $5,000 each. On August 31, 1918, he was married to Ruth Blair, who is known in this proceeding as Ruth Blair Farley. Farley died October 20, 1918, intestate, leaving as his widow Ruth Blair Farley. An award was made in the Bureau of War Risk Insurance April 4, 1919, to Mrs. Esther E. Farley and Etta Farley, with monthly payments to each of $28.75, commencing October 21, 1918. This was amended, with the same award, payment commencing November 21, 1920. Payment, however, was suspended, but was resumed in April, and continued to October 31, 1921; all back payments in the meantime being made. This award was canceled, and another made and approved December 30, 1921, with payment of $57.50 to Ruth Blair Farley, as beneficiary, commencing October 21, 1921. This latter award is controverted by the original beneficiaries; they claiming that the deceased at no time made any changes in beneficiary, or designated Ruth Blair Farley as his rightful beneficiary. This suit was instituted to cancel the latter award, and to recover from the government the accruing payments. Both the government and Ruth Blair Farley are contesting the claim of plaintiffs.

The controversy depends upon whether the deceased, in his lifetime, made a regular and legal designation of his wife as beneficiary under his war risk insurance. That Farley intended to make such change in beneficiary can hardly be denied, in view of the evidence submitted at the trial. He applied to Maj. George H. Ball, Quartermaster Corps, for a blank form with which to change the designation of his beneficiary, and was given a blank appropriate for the purpose. Shortly afterwards Farley appeared at the orderly office, which was the first sergeant's office, and presented to John H. McDougall, company clerk, "blanks

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

filled out." Being asked, "What kind of blanks?" McDougall testified:

"Insurance and allotment both. They were made out wrong, and I took them and penciled in the notes on these blanks, and being so busy, and having so many papers ahead of me, I threw them on the back of the desk with another pile of papers, of insurance blanks and allotment changes on the back of my desk, to give them attention as I could, in the order that I could, as I had to do on account of the lot of work that was piled onto us and forced onto us at this time. There was an awful lot of it. * * * Sergeant Farley signed, in my presence, these forms in blank, and this form that he had filled out, which was wrong, and I penciled in the changes as it should be, was fastened onto these forms and thrown in the pile on top of my desk."

Witness gives as the reason why he remembers the transaction so well that the soldiers, on being apprised of the fact that Farley was married, "started to kid him," and he was induced to furnish the cigars for the boys. Farley signed the required number of blanks, and witness is not sure whether it was in triplicate or duplicate. In the usual course then observed at the orderly office, these blanks would be filled in by typewriter, and dispatched on their way to the proper officers entitled to their custody. Witness does not say further that he has any recollection of filling these blanks, or respecting what he did with the papers.

The blanks, when filled out and signed by the applicant, under the regulations, all went by messenger to the company commander, to be witnessed by him. They were then returned to the first sergeant's office, to be disposed of as follows: One to be deposited with the soldier's service record, kept in the orderly office, in an envelope used for the purpose; one mailed to the Bureau of War Risk Insurance, at Washington; and one sent to the camp insurance officer at division headquarters.

No trace has been had of these papers showing designation of change of beneficiary since McDougall had them, as testified by him, although the allotment or family allowance papers, witnessed by the company commander, are in their proper place in the files of the bureau. The rules of the Bureau of War Risk Insurance respecting change of beneficiaries, obtaining at a time prior to the death of Farley, are as follows:

"(1) Every change of beneficiary shall be made in writing and shall be signed by the insured and be witnessed by at least one person. No change of beneficiary shall be valid unless and until it is recorded in the Bureau of War Risk Insurance. A change of beneficiary shall, wherever practicable, be made upon blanks prescribed by the bureau.

"(2) A change of beneficiary may be made by last will and testament. Payments of installments of insurance shall be made to the beneficiaries last of record in the bureau until the bureau receives notice of such change. In the absence of any beneficiary of record, payments shall be made according to the laws of intestacy, as provided in article IV, until the bureau receives notice that a beneficiary was designated by last will and testament."

The strong contention of counsel for plaintiffs is that no change of beneficiary was made or accomplished, by appropriate act of Farley prior to his death, in compliance with these rules of the bureau, and hence that plaintiffs are entitled to the monthly payments in accordance with his original designation of beneficiaries.

By reason of the provision of the statute (section 514kk, U. S. Compiled Statutes), "that in the event of disagreement as to a claim under the contract of insurance between the bureau and any beneficiary or beneficiaries thereunder an action on the claim may be brought against the United States in the District Court of the United States in and for the district in which such beneficiaries or any one of them resides," it is quite apparent that it was not intended that an award of the bureau to any particular alleged beneficiary, such as was made in the present case to Ruth Blair Farley, should preclude the action, or bar recovery by the rightful beneficiary or beneficiaries. In fact, the present suit was instituted by suggestion of the bureau.

[1] By section 514uuu, U. S. Compiled Statutes, subject to regulations, the assured is accorded the right to change the beneficiary or beneficiaries of his insurance without their consent, but only within the permitted classes provided by statute. It is beyond dispute that generally such regulations must be substantially complied with in order to effect the change. Independent Foresters v. Keliher, 36 Or. 501, 59 Pac. 324, 1109, 60 Pac. 563, 78 Am. St. Rep. 785; Stringham v. Dillon, 42 Or. 63, 69 Pac. 1020; McLaughlin v. McLaughlin, 104 Cal. 171, 37 Pac. 865, 43 Am. St. Rep. 83; Wendt, Adm'r, v. Iowa Legion of Honor et al., 72 Iowa, 682, 34 N. W. 470. To this rule, however, there are well-settled exceptions. Supreme Conclave, Royal Adelphia, v. Cappella (C. C.) 41 Fed. 1. One of these exceptions is clearly stated in United Artisans v. Cronise, 88 Or. 602, 606, 172 Pac. 109, 110 (L. R. A. 1918B, 1131):

"When the assured has pursued the course prescribed by the laws of the association and has done all that he can possibly do to change the beneficiary and a sufficient time has elapsed for a new certificate to be issued in the ordinary course of business, but before the new certificate is actually issued he dies, a court of equity will consider that done which ought to have been done and act as though the new certificate had been issued before the death of the assured."

[2] The exception is supported by abundant authority. The purpose of the rules, of course, is to provide a formula for effectuating the change of beneficiaries; but they are intended, also, largely for the benefit of the bureau, in order to protect the United States against liability of payment to the wrong person, or double payment of benefits. Such is obviously the intendment voiced by the declaration that no change of beneficiary shall be valid unless and until it is recorded in the Bureau of War Risk Insurance, and the admonition that whenever practicable the change shall be made upon blanks prescribed by the bureau.

Military discipline is usually strict and rigorous, and in the present instance the insured was required to designate the change of beneficiary upon blanks prescribed by army regulations. Farley attempted, in perfect good faith, to comply with the regulations, and procured a blank or blanks designated for use in making a proper change of beneficiary. The testimony is not clear whether he presented one blank or three (that is, in triplicate), signed by himself, to the clerk for effectuating the change. Maj. Ball, in his direct examination, speaks of but one blank; but, in his cross-examination, when asked if he simply

handed the deceased the "blanks," he answered in the affirmative. McDougall seems to treat the matter as though blanks were handed to him signed by Farley. None of the blanks were so signed by a witness; nor were they filled in in typewriting, another requirement imposed upon the soldier by Lieut. Steel, who was then in immediate charge of the miscellaneous detachment. The course pursued in the orderly office at the time was, when the blanks were filled out and signed by the assured, to forward them by messenger to the company commander for witnessing, evidenced by his signature, when they were immediately returned to the orderly office, to be disposed of as the regulations required. The commanding officer signed the applications more as an identification of the papers than as witness to the signature. In practice, he did not, with some exceptions, perhaps, see the applicant sign, nor otherwise require identification of the signature. Such was the method and custom observed, and military discipline naturally made the soldier chary of insisting otherwise.

It is true that the blanks signed by Farley and presented to the clerk were not filled out as the rules required; neither were the new blanks filled in, when signed by him, in the presence of the clerk; but Farley did exactly what he was directed to do, and all he was directed to do, by the clerk in charge. Having done this, he went away, no doubt feeling fully persuaded that he had done all that was required of him for formally effectuating change of beneficiary. The forms were simple in structure, and all that was required was the use of an original form, with the designation of the substituted beneficiary, and a showing that he or she came within the permitted classes of beneficiaries. Other facts to be stated were mere matter of form.

[3] It is true, also, that the change of beneficiary was not recorded in the Bureau of War Risk Insurance. The government, however, is satisfied without the observance of this requirement, and is now insisting that the change is valid, and that the new beneficiary is entitled to the monthly payments. Under such conditions, plaintiffs can hardly insist that the attempted change is a nullity because not filed in the Bureau of War Risk Insurance. Brett v. Warnick, 44 Or. 511, 518, 75 Pac. 1061, 102 Am. St. Rep. 639.

Now, to conclude, I am persuaded that Farley did all that he could reasonably be expected to do to perfect his transfer of beneficiary under the attending conditions and circumstances. The army officers completely dominated his action, and, in so doing, they cannot properly be held to be his agents; nor would it be just and equitable to treat such army officers as his agents in disposing of the applications, as by the regulations required, when left with the clerk in the orderly office. If the clerk had done his duty under the prescribed regulations, the duty which was imposed upon him by the military authorities, and which he customarily observed, Farley would not have suffered any default.

In view of this conclusion, the plaintiffs will be denied recovery. So will the government be denied recovery against plaintiffs of any amount. The defendant Ruth Blair Farley will have a decree against the government for all monthly payments due and payable subsequent to October 31, 1921; neither the government nor defendant Farley to recover

costs against plaintiffs. Further, counsel for defendant Farley will be allowed 5 per cent. of her recovery as attorney's fees under the statute.