FLORENCE S. BALEY, Plaintiff, *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Supreme Court, Erie County, February 23, 1933.

*George E. Phillies*, for the plaintiff.

*Roland Crangle*, for the defendant.

CHARLES B. WHEELER, Official Referee. This action is brought to recover on a policy of insurance issued by the defendant to one Fred E. Baley in 1921, by which the insurance company agreed to pay on the death of the insured $2,500, and, in the event of his death by accident, the further sum of $2,500.

These sums by the terms of the original policy were made payable to the insured's brother, Samuel Baley, beneficiary. At the time of the issuance of the policy, Fred E. Baley was unmarried. However, about a year and a half before his death, Fred E. Baley married the plaintiff.

The right to change the beneficiary was given the insured by the terms of the policy.

On the evening of December 21, 1931, as a result of a collision of his automobile with a truck, the insured received serious injuries. He was taken to the Buffalo General Hospital, where he died on the early morning of December twenty-fourth. His brother, Samuel Baley, was riding with him at the time of the accident, and also suffered some injuries and was taken to another hospital His injuries, however, were not fatal.

For some time prior to the accident the policy was in the possession of the said Samuel Baley and the members of his family.

After being taken to the hospital, the insured, Fred E. Baley, expressed the wish to change the beneficiary from his brother, Samuel, to his wife, the plaintiff. He accordingly wrote a note and delivered it to his friend, Hanover, asking him to procure the policy in question, then in the possession of his brother or his family, in the village of Lancaster. Hanover went that day to the brother's home, saw his wife, and asked for the policy. She refused to surrender the policy, saying she would not give it up, as they had been paying premiums on it for a long time. These facts being made known to the insured, his attorney made efforts to ascertain particulars as to said policy for the purpose of filling in and completing the blank form provided by the defendant for the purpose of changing the beneficiary in said policy. On December twenty-third the necessary and proper blank for such change was executed by the insured, and taken to the local office of the defendant in the city of Buffalo. However, the attorney did not. reach the local office until after five that afternoon. The manager had left his, office for the day, but the blank request for a change of beneficiary was left with a girl in charge with a request to give it to the manager on his reaching the office in the morning.

The insured, Fred E. Baley, however, died shortly after one o'clock on the morning of the twenty-fourth, before the request for a change of beneficiary was mailed to the home office of the company at Newark, N. J. Of course, the policy itself being in the hands of Samuel Baley or his family did not accompany the request for a change of beneficiary. Proofs of death of the insured were furnished the insurance company, and the plaintiff and Samuel Baley each demanded of it the payment of the death benefit provided for in the policy.

The insurance company has paid the fund to neither party, but on the trial admits it owes to the one entitled to receive the fund the sum of $4,483.97, with interest thereon from December 24, 1931. The amount of the policy is reduced to the sum stated, owing to the fact that the insured during his life had borrowed money on it from the company. The insurance company refusing to pay, the plaintiff began this action to recover on the policy.

The insurance company has interposed by answer several defenses. Among others, that the insured was mentally incompetent at the time to execute a change of beneficiary. However, the evidence shows there is no merit to that claim.

It further alleges in substance that the terms of the policy were never complied with in order to effectuate any legal change of the beneficiary.

On the trial before this referee, witnesses were called in an effort .

to show that the insured had parted with all his interest in the policy to his brother, Samuel, the original beneficiary, and that he had no interest or ownership of the policy at the time of his death. The referee will discuss these various claims.

The insured, Fred E. Baley, we are of the opinion, never parted with the ownership and control of the policy in question. The policy contained the following provision: "Assignments — Any assignment of this policy must be in writing, and the Company shall not be deemed to have knowledge of such assignment unless the original or a duplicate thereof is filed at the Home Office of the Company. The Company will not assume any responsibility for the validity of an assignment."

There is no claim on the part of the company or of any one else that any such assignment in writing was ever executed by the insured, Fred Baley. Had the insured intended to make his brother a gift of the policy, he would have undoubtedly given him the written assignment required.

On the other hand, it is claimed that Fred Baley, the insured, being unable to pay certain premiums prior to his death, asked his brother, Samuel Baley, the original beneficiary, to pay the premium, and said, in substance, pay the premium, the policy is yours. This statement, if made, does not meet the requirements or conditions of the policy to make a valid assignment.

The plaintiff challenges the claim of the defendant as to the alleged transaction, and contends the title and control of the policy was never in fact surrendered by the insured.

This contention is sustained, the referee thinks, by the fact that, after the alleged talk, Fred E. Baley, the insured, in fact exercised dominion and control of the policy. He borrowed money on the policy from time to time from the company. The first was a loan of $75 on June 25, 1927. This loan was increased June 1, 1928, to $225. Again, on April 26, 1930, it was increased to $343, and on March 30, 1931, to $465.41, and on September 2, 1931, to $511.

At the time of Fred E. Baley's death he owed the company $511 for borrowed money, and had assigned as security for said loan to said company "the said policy and all profits and benefits now due or which may hereafter become due thereon." The policy contained certain loan provisions to the effect: "If the policy be continued in force, the Insured may borrow from the Company without the consent of the beneficiary, if any named herein * * * an amount up to the limit of the cash surrender value" thereof.

The fact that the insured exercised this right and did borrow on the policy shows he did assert and exercise ownership and control

over it, and is inconsistent with the claim he had parted with such ownership and control.

It is undisputed, too, that when in the hospital after his accident he wrote a note asking his friend, Hanover, to obtain the policy from Samuel Baley or members of his family that he might change the beneficiary, and that he in fact executed a written request to the company to make the change in favor of the plaintiff

While unquestionably some of the premiums were collected by agents of the company from the wife of Samuel Baley, nevertheless at least some of the premiums were paid by Fred E. Baley. The witness Mary E. Foot, with whom Baley boarded in the summer of 1931, so testified. Fred Baley gave her money to pay a premium, and she paid it. She is a most credible witness.

On December twenty-first, the day before the accident, Fred E. Baley paid the company a premium, although Samuel Baley testified that in October before he gave his brother the money with which to do so. In any event, the evidence referred to shows Fred Baley, the insured, did acts which he would not have done had he in fact parted with all interest in his policy to his brother, Samuel.

The referee has no doubt that during the last two or three years prior to the insured's death the agents of the company did collect certain premiums which they got from the wife of Samuel Baley. They so testified.

Fred Baley, the evidence shows, was a carpenter, and for some months at a time was absent from the city engaged in work in other cities, and it would not have been strange that he should have had some understanding or arrangement under the circumstances by which his brother, when necessary, would advance the premiums, especially as the brother was the beneficiary. This might well have been done without the insured relinquishing all rights under the policy.

If such moneys were in fact advanced by Samuel Baley, he has a legitimate claim against his brother for such advances, but such payments, if made, would not make Samuel owner of or entitled to the proceeds of the policy, if, before his death, Fred E. Baley made a valid change in the beneficiary. As to whether or not that was done is a question to be determined.

Samuel Baley was called as a witness for the defendant. He testified in substance that his brother, Fred, was indebted to him for money advanced in a considerable sum. He put the amount at over $1,000. Both men were carpenters by trade, and for some months before the accident both worked together at the Attica prison, then under construction. Fred Baley took his brother daily in Fred's car to Attica for work. Samuel had a family to support,

and Fred was unmarried until about a year and a half before his death. It is difficult to understand why under the circumstances Fred would have become indebted to his brother in any such amount claimed. His earning capacity was equal to his brother's and his expenses less. However, with the evident purpose of fortifying his claim, Samuel Baley testified that for June, July, August and September, 1931, Fred Baley lived and boarded with him at Lancaster, when the plaintiff was absent from Buffalo, attending a sick sister. As matter of fact, it was conclusively shown by the testimony of Mrs. Foot and Amy Franchell, most trustworthy witnesses, that during the months named Fred E. Baley boarded the entire time with Mrs. Foot, and did not live with his brother, Samuel, as he testified. Genevieve Baley, the daughter of Samuel Baley, in turn testified to the same untruth as to Fred Baley boarding with her father during the months stated.

The referee can reach but one conclusion, and that is that Samuel Baley and his daughter deliberately testified to an untruth to bolster their case, and that no credence can be given to the testimony given by him on this trial. Deliberately false in one, false in all, and the referee is forced to the conclusion of fact that Fred E. Baley never did orally or otherwise give or relinquish to his brother Samuel his rights in or under the policy in question.

The question, however, remains whether or not what was done by Fred E. Baley operated, or was sufficient in law, to change the beneficiary from Samuel Baley to the plaintiff in this action.

There is and can be no dispute as to first what was done. Fred Baley, the insured, was seriously injured on the way from Attica on the evening of December 21, 1931. His brother, Samuel, was in the car with him, and also suffered injuries, but his injuries were not fatal. Fred was taken to the Buffalo General Hospital, his brother, Samuel, to another hospital. Fred died as the result of his injuries in the early morning of the twenty-fourth.

In the morning of the twenty-second he was visited by Mr. Harold C. Hanover, the secretary of the labor union to which he belonged. He wrote a note asking him to procure the policy in question from his brother. Hanover went to the residence of Samuel at Lancaster, N. Y., and saw Mrs. Samuel Baley, asked for the policy, and was told she did not know where the policy was, and did not and would not give him the policy. As matter of fact, the policy was in her possession at the house. Mrs. Samuel Baley stated she would not give up the policy, as they had paid premiums on it for a long time.

Miss Maisel, an attorney, was requested to take steps to bring about a change in the beneficiary and make the same payable to the

plaintiff in this action. Miss Maisel went to the local office of the company in the city of Buffalo, and procured from it the usual blank request for such change. She returned to the hospital and filled out the blank, and it was signed and executed by Fred E. Baley. She took it without delay to the local office of the company. It was after five P. M., and the local manager had left for the day, but the paper was left at the office with the request to call the local manager's attention to it on his coming to the office in the morning.

The local manager got it the next morning, and forwarded the paper to the home office of the Prudential Insurance Company. However, Fred E. Baley died early that morning, before the request for change of beneficiary was mailed, and it did not reach the home office until after the insured was dead.

Proofs of accidental death and request for payment were properly made to the insurance company both by the plaintiff and by the original beneficiary named in the policy. Then this action now in hand was brought to recover the amount due on the policy.

The insurance company concedes its liability to pay the amount less the loan made, but defends the action on the ground the plaintiff is not entitled to recover, and contends that the original beneficiary is entitled to the money. This action really resolves itself into a controversy between the plaintiff and Samuel Baley, the original beneficiary. It seems to the referee that Samuel Baley should have been brought into the case by way of interpleader, but, for reasons not disclosed, that step has not been taken, and the referee must dispose of the case on the evidence taken. The facts justify the finding that the insured took all the steps he could to change the beneficiary from Samuel Baley to the plaintiff, and did not forward the policy with the application for a change because he was unable to obtain possession of the policy.

If Samuel Baley were a party defendant and stood on the proposition that no change of beneficiary was made because the policy did not accompany the application, it would, we think, be a complete answer to that contention that he or his agents refused to deliver the policy so that the insured could comply with the requirements of the policy in that regard, and is estopped from taking advantage of their own wrong. This is elementary. The insurance policy reserved the insured the right to change the beneficiary: " Change of Beneficiary — If the right to change the Beneficiary has been reserved * * * the Insured may at any time while the Policy is in force, by written notice to the Company at its Home Office, change the Beneficiary or Beneficiaries under this policy, such change to be subject to the rights of any previous assignee and to become effective only when a provision to that effect is endorsed

on or attached to the Policy by the Company, whereupon all rights of the former Beneficiary or Beneficiaries shall cease."

The facts as shown by the evidence justify the finding that Fred E. Baley, the insured, did everything in his power to bring about a change in the beneficiary from his brother to his wife. On the morning of December twenty-second he requested his friend, Hanover, to obtain the policy. Hanover went to the brother's house to get it, but the brother's wife refused to give it to him. Had the policy been delivered to him, there was sufficient time for the execution of the request for a change and mailing it to the home office of the defendant so it would have reached there before the insured's death. However, delivery of the policy was refused. This necessitated steps on the part of the attorney to ascertain data to enable the proper filling in of the blank. Such data were obtained, but delayed, and the request for a change was not delivered to the local manager until after five of the day before the insured died.

We think it but fair to say the insured did all that could have been done under the circumstances to accomplish the desired change, and that the delay, such as it was, was occasioned by the refusal of those having possession of the policy to deliver it over when asked to do so.

As we have already indicated, that was a wrongful refusal. They should have complied with the request. It goes without saying that they cannot take advantage of their own wrong, and ought not in justice be permitted to realize on the policy by a wrongful detention of it, and thereby defeating the right of the insured to change it for the benefit of one to whom he wished the proceeds to go.

Samuel Baley had no vested right in the policy. The contest is now virtually one between the plaintiff and Samuel Baley. The insurance company acknowledges its liability either to the plaintiff or Samuel Baley. With this acknowledgment of liability, we think that the defendant should have interpleaded Samuel Baley and brought him in as a defendant. It has not been done.

There are certain general rules of law which have bearing upon the questions now under consideration.

1. The provisions of the policy as to the method of changing beneficiaries are for the benefit of the insurer to protect it in dealing with those claiming rights under it. (*Navassa Guano Co.* v. *Cockfield*, [D. C.] 244 Fed. 222; *Rothstone* v. *Norton*, 231 App. Div. 59, 61.)

In the present case, the insurance company has suffered no damage by reason of the failure to literally comply with the terms of the policy. It holds the insurance fund intact, and concedes

its liability on the policy to either the plaintiff or the original beneficiary.

2. The indorsing of the change on the policy is merely ministerial on the part of the company. (*White* v. *White*, [Sup.] 194 N. Y. Supp. 114, and cases cited.)

3. Courts of equity seek to do that which insured intended to have done. (*White* v. *White*, [Sup.] 194 N. Y. Supp. 114.)

4. A beneficiary has no such vested interest in a policy as to require notice to him of a proposed change. (*Reid* v. *Durboraw*, [C. C. A.] 272 Fed. 99.)

5. Equity will treat change as actually made when insured has done all he could to meet the conditions of a policy. (*Reid* v. *Durboraw*, [C. C. A.] 272 Fed. 99; *Matter of Chatham Phenix Nat. Bank & Trust Co.*, 232 App. Div. 598, citing *Lahey* v. *Lahey*, 174 N. Y. 146; *Luhrs* v. *Luhrs*, 123 id. 367; *Rothstone* v. *Norton*, 231 App. Div. 59; affd., 256 N. Y. 601.)

The general rule governing cases like that now under consideration we think is correctly stated in the leading case of *Lahey* v. *Lahey* (174 N. Y. 146, 155), where the court said, citing *Supreme Conclave, Royal Adelphia* v. *Cappella* ([C. C.] 41 Fed. 1): " That the general rule that the insured is bound to make such change of beneficiary in the manner pointed out by the policy and bylaws of the association, is subject to three exceptions: 1. If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary, has issued a new certificate, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued.

" 2. That if it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made.

" 3. If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will treat such certificate as having been issued."

The court cites as sustaining this view the following cases: *McLaughlin* v. *McLaughlin* (104 Cal. 171; 37 P. 865); *Marsh* v. *American Legion of Honor* (149 Mass. 512; 21 N. E. 1070); *Wilson* v. *Bryce* (43 App. Div. 491, 494.)

Applying the rule as approved, we are of the opinion the plaintiff's case falls within the exceptions stated. It became impossible for the insured to send to the home office of the company for proper indorsement because those having possession of it refused to deliver it up to the insured. Second, the insured did all within his power

to comply with the terms of the policy, and change the beneficiary. Had those in possession of the policy handed it over, it could have been mailed so as to have reached the home office before the insured's death. The refusal to deliver delayed the execution of the request for a change in order that insured and his attorneys could obtain the necessary data to fill the blank.

The insurance company acknowledges its obligation to pay to either the plaintiff or to the original beneficiary. The real contest is between the plaintiff and Samuel Baley. Had the insurance company impleaded Samuel Baley and paid the fund into court and left the plaintiff and Samuel Baley to have litigated their respective claims to it, we are of the opinion little question would exist as to which of the two would be entitled to the fund. We think in equity the plaintiff is legitimately entitled to the fund; although this is in form a common-law action on the policy, we are of the opinion that under all the facts the court should apply the equitable principles which bring the case within the exceptions stated.

The defendant cites to the referee the case of *Strianese* v. *Metropolitan Life Ins. Co.* (221 App. Div. 81). On a casual reading of that case it would seem it was an authority against the plaintiff's right to recover. However, the appeal in that case was from an order denying a motion for judgment on the pleadings. The learned justice writing on the decision of the appeal seems to have based it largely on the fact that the complaint failed to allege the plaintiff had done all that could have been done to effect a change of beneficiary. In other words, that the complaint failed to bring that case within the exceptions to the general rule stated to obtain in *Lahey* v. *Lahey* (174 N. Y. at p. 155).

In the instant case, the facts shown by the evidence we think bring it within the exceptions for the reasons we have given, so we think the *Strianese* case is distinguishable.

It is manifest the insured desired to change the beneficiary named in the policy, and did all he could do to bring about such a change, but was impeded by the wrongful acts of the beneficiary and his agents, and under the circumstances it would be most inequitable that the beneficiary should benefit by their wrongful acts.

In the case of *State Mutual Life Assurance Co.* v. *Bessett* (41 R. I. 54, 58; 102 A. 727, 729) the decisions of various States are cited and discussed.

In the *Bessett* case an insured given the right to change the beneficiary filled a blank form furnished by the company and delivered it to the general agent of the insurer to be forwarded to the home

office. The nomination of change of beneficiary did not reach the home office until after the death of the insured. The policy provided that: "Every change or designation must be made by written notice to the company at its home office, accompanied by the policy and will take effect only when indorsed on the policy by the company."

The court held the proposed change became effective, although, at the time of the insured's death, the policy had not reached the home office, and the indorsement had not been made on the policy itself. It said, after citing various cases: "This court, therefore, has unmistakably adopted the view that an insured may change a beneficiary under an insurance policy (having reserved the right to do so) by doing all that is required of him to effect the change, or all that is possible for him to do, although certain formal or ministerial acts * * * of the insurer are not performed before the death of the insured."

These considerations lead the referee to the conclusion that the plaintiff is entitled to recover in her individual capacity. So ordered.