[Civ. No. 1362.   Third Appellate District.—June 11, 1915.]

THE SUPREME LODGE OF THE FRATERNAL BROTHERHOOD (a Corporation), v. LIBBY V. PRICE, Appellant; NELLIE JONES and WILLIE JONES, Respondents.

MUTUAL BENEFIT SOCIETIES—CERTIFICATE—CHANGE OF BENEFICIARY—NONCOMPLIANCE WITH BY-LAWS.—A writing executed by a member of a fraternal benefit society a few days prior to her death expressing a desire that in case anything should happen to her before she had a chance to change the beneficiary named in her certificate, she wanted it changed from her mother to her brother and sister, is not effectual to accomplish such purpose, where not only the formal mode for changing beneficiaries, as provided by the by-laws of the society, was not followed, but no direction was given by her upon the execution of the writing to file it with the society, or the society advised in any manner of the execution thereof until it was filed the day following her death; and the filing by the society of a bill of interpleader and the deposit of the benefit money in court for the person who should be adjudged to be the rightful claimant is not a waiver on the part of the society of compliance with its rules in such regard.

ID.—CONSTITUTION AND BY-LAWS—INTEGRAL PART OF CERTIFICATE.—The constitution and by-laws of mutual benefit or co-operative insurance associations, and particularly their rules and regulations governing the issuance of benefit certificates and changing beneficiaries, become and are an essential integral part of every such certificate issued by them.

ID.— BENEFIT CERTIFICATE — CONTRACT BETWEEN ASSOCIATION AND MEMBER.—Such certificate constitutes a contract between the association and the assured, and every person insured by such association is charged with knowledge of its constitution and by-laws and is bound by their requirements.

ID.—RIGHT TO CHANGE BENEFICIARY—NATURE OF INTEREST IN CERTIFICATE.—Where such constitution and by-laws provide that the assured may, at any time, change the beneficiary under his certificate or policy, the beneficiary named does not acquire an indefeasible right to the benefit money, but becomes such beneficiary subject to the right of the assured to substitute, at any time during the life of the latter, some other person in his place and stead, as the beneficiary of his bounty under the policy.

ID.—REQUIREMENTS FOR CHANGE OF BENEFICIARY.—In such a case, a change of beneficiaries can only be effected by a substantially

strict compliance with the requirements of the constitution and by-laws in that particular.

ID.—INTEREST OF BENEFICIARY VESTED UPON DEATH.—Upon the death of the assured, where no change in beneficiaries has been made, the person named as beneficiary in the certificate *ipso facto et eo instanti* acquires a vested right to the benefit money.

ID.—NATURE OF LAWS AND REGULATIONS OF BENEFIT ASSOCIATION—WAIVER.—The laws and regulations of mutual benefit associations are made and adopted for their exclusive benefit and protection, and they may, therefore, in the matter of change of beneficiaries by the members thereof, waive the formal or prescribed mode for effecting such change, and when such waiver takes place, it is not within the competence of persons interposing conflicting claims to the benefit money to complain because of noncompliance with the requirements of the laws of the association in making the change.

ID.—EXCEPTIONS TO RULE.—There are three recognized exceptions however, to the general rule requiring an exact compliance with the mode prescribed by the laws of a mutual benefit association for effecting a change of beneficiaries; namely: 1. If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary, has issued a new certificate, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued; 2. If it is beyond the power of the insured to comply literally with the regulations a court of equity would treat the change as having been made; and, 3. If the insured has pursued the course pointed out by the laws of the association and has done all in his power to change the beneficiary, but before the new certificate is actually issued he dies, a court of equity will treat such certificate as having been issued.

ID.—FILING OF BILL OF INTERPLEADER—ABSENCE OF WAIVER.—The act of a fraternal insurance society in filing a bill of interpleader and depositing in court insurance money the title to which is in dispute, to be paid to the claimant or claimants to whom it may be determined that it rightfully belongs, cannot in reason be held to be the equivalent of a waiver by the association of compliance with its rules and regulations respecting the act of changing beneficiaries, in a case where a change is sought to be established after the death of the assured, as in such a case the named beneficiary has acquired a vested right in the certificate, which he had not during the lifetime of the assured, and the payment of the money into court with a prayer that the claimants litigate their rights thereto, can and does amount to nothing more than the recognition of the existence of a legal liability against the society for the amount specified in the certificate and to a demand that the society be protected against a duplicate payment of the benefit money.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, from an order requiring the defendants to interplead, from a restraining order, and from an order permitting the plaintiff to deposit money in court. M. S. Sayre, Judge presiding.

The facts are stated in the opinion of the court.

W. C. Cavitt, for Appellant.

Davis, Kemp & Post, for Plaintiff and Respondent.

Crist, Johnson & Schuhl, Albert Laurence Johnson, and Ferno J. Schuhl, for Respondents.

HART, J.—The plaintiff brought this action against the defendants for the purpose of compelling them to interplead and litigate among themselves their respective claims to the sum of one thousand dollars, which the plaintiff admits is due from it to the rightful beneficiaries'' of one Vivian Viola Jones, deceased.

The cause was tried before a jury and a verdict rendered in favor of the defendants, Nellie and Willie Jones, and judgment thereupon entered accordingly.

The defendant, Libby V. Price, brings the cause to this court on an appeal from the judgment and from the order requiring the defendants to interplead and litigate their respective claims to the money in dispute, from a restraining order issued in the case, and from the order permitting the plaintiff to deposit the said money in court, subject to the decision herein.

The plaintiff is a corporation organized and existing in pursuance of the laws of the state of California, and is the governing body of a fraternal benefit society known as the ''Fraternal Brotherhood,'' which society is maintained ''for the mutual benefit of its members,'' Said society issues to its members benefit certificates providing for the payment of benefits to its beneficiary members'' and to their beneficiaries. The constitution and by-laws of said society provide that the mother, brother, sister, half-brother, and half-sister of a member are each eligible as a beneficiary and may be

27 Cal. App.—39

named in the benefit certificate by the member as a beneficiary.

Among the provisions of the by-laws of the plaintiff is that a member, to whom a benefit certificate has been issued, while in good standing in the society, may change his beneficiaries in the following manner:

"(a) By filing with the treasurer of his lodge a written application for change of beneficiary on the prescribed form, surrendering to the treasurer the old benefit certificate, and paying a fee of fifty cents, whereupon the treasurer shall cause such application and the benefit certificate, together with the sum of fifty cents, to be transmitted to the supreme secretary, and shall certify to the genuineness of the signature of the member.

"(b) On receipt of the old certificate and the fee, together with the application as above provided, the supreme secretary shall issue a new benefit certificate with the desired changes incorporated therein.

"(c) If a member desires to change his beneficiary or beneficiaries, and the benefit certificate is in the custody of a person other than the member, and such custodian refuses to deliver up such certificate, the member shall make an affidavit setting forth the facts of the case, whereupon the supreme secretary shall issue a second certificate to such member with such required change, provided all other requirements of the constitution and laws of the society have been complied with.

"(d) Whenever a second certificate is issued the first one shall *ipso facto* become void.

"(e) No change of beneficiaries shall be made except as herein provided."

The following further provision is contained in section 199 of said laws: "Assignment or Disposition by Will Void." "Any assignment or transfer of a benefit certificate or any interest therein, to secure any indebtedness, or for any other purpose, or any disposition by letter or will in any other manner, except as provided in these laws shall be void."

It appears that, on the twenty-sixth day of November, 1909, Vivian Viola Jones, a daughter of the defendant, Price, and a sister of the defendants, Nellie and Willie Jones, became a beneficiary member of the plaintiff and that she

named her mother in the certificate evidencing such membership as beneficiary thereunder.

During the year 1912, Vivian became so ill from some malady, the nature of which does not appear, that she was required to go to the Lane Hospital, in the city of San Francisco, for medical care and treatment. On the first day of October, 1912, while still seriously ill and confined to her bed, she executed the following instrument:

"October 1st, 1912.   Lane Hospital, San Francisco.

"To Whom It May Concern: My last and final will and desire: In case anything should happen to me before I have a chance to change the original Life Insurance Policy, I want it changed over from Mrs. L. V. Price, in whose name it is now, to my sister, Nellie Jones, and my brother, Willie Jones. I sign this will and desire while I am in my right senses, for this is my final and last will.

(Signed) "VIVIAN JONES.

"R. BERNHARD,
"A. J. MEAGHER."

On the sixth day of October, 1912, five days after she executed the foregoing writing, Vivian expired at said hospital.

Said writing, which was prepared by A. J. Meagher, one of the witnesses thereto, and to whom Vivian was engaged to be married, was not filed with the plaintiff before the death of Vivian, nor was the plaintiff in any manner notified thereof or of her desire to change beneficiaries under her policy or certificate prior to her death.

On the day immediately succeeding that upon which she expired, however, to wit: on the seventh day of October, 1912, Ferno J. Schuhl, an attorney, representing Nellie and Willie Jones, addressed and caused to be delivered to the proper officers of the plaintiff a written notice of the purported substitution of the said defendants as beneficiaries for and in the place of Mrs. Libby Price under the policy or certificate issued to Vivian Jones. This notice referred to the act of Vivian Jones in executing said writing as a "transfer" of the policy, and stated: "We shall send you the assignment in due time."

On the eleventh day of October, 1912, the instrument itself was filed with the officers of the local lodge of the Fraternal Brotherhood, and accompanying it, and also likewise filed with the local lodge, was an affidavit made by said

A. J. Meagher, fiancé of Vivian, in which, he deposed "that during the past five months said Miss Vivian Jones expressed her desire to have changed in her policy of life insurance in the Fraternal Brotherhood, the name of beneficiary from Mrs. L. V. Price to Nellie Jones and William Jones, her brother and sister; that, on the 1st day of October, 1912, the said Vivian Jones, in the presence of affiant and Miss R. Bernhard, at Lane Hospital, made and executed the following desire and signed the same in their presence," and then follows therein the instrument executed by Vivian Jones as the evidence of her desire to effect the change, and above quoted.

While principally upon the facts thus stated hinges the decision of the ultimate question submitted by these appeals, there were other facts brought out by the evidence which are addressed to the question of motive or want of motive in the deceased for making the purported change of beneficiaries, and, although, in this case, the question of motive can exert little or no influence upon the production of the result arrived at here, the facts bearing upon that question reveal the circumstances under which the defendant, Price, was, in the first instance, made the beneficiary under the policy of the deceased, and those leading to and immmediately surrounding the purported change, and they, therefore, without impropriety, may be briefly stated.

It appears that, up to some time in the year 1905, the defendant, Libby V. Price, resided at Reno, Nevada. She had been divorced from her husband, the father of the deceased and the defendants Nellie and Willie Jones, and, in the year just named, went to the city of San Francisco and there established her residence. The children above named— the issue of the marriage between Jones and Mrs. Price— remained in the custody of the father at Reno. At some time after her divorce from Jones, Mrs. Jones intermarried with a man by the name of Price, who died in the month of March, 1912.

In the month of November, 1909, however, Vivian Jones, the eldest of the three children, left Reno and the custody of her father and went to San Francisco and to the home of her mother, with whom she lived the greater part of the time prior to the date of her death. Up to that time, she had not seen her mother for a period of three or four years.

Shortly after her arrival in San Francisco, Vivian made an application for membership of the plaintiff as a beneficiary member and, as already shown, her application was granted, the certificate naming her mother as beneficiary was issued to her and the same by her delivered to her mother, who, it may be stated, was also a member of the association.

While residing with her mother, Vivian attended Heald's Business College, in said city, and took a course in stenography, after which she secured employment in a furniture store.

While employed in said store, she was attacked by the disease which ultimately led to her death. She was placed in the Hahnemann Hospital, in San Francisco, for treatment. Having undergone some improvement in health, she later returned to her mother's home, and subsequently made a brief visit to Sebastopol, Sonoma County. Returning from the last named place to her mother's home, she there remained with her mother until the evening of September 13, 1912, when she was taken in an automobile by Mr. Meagher, heretofore mentioned, to the Golden West Hotel, in San Francisco, for the purpose of visiting with her father, who was then temporarily stopping at said hotel. She was still very ill, and while at the said hotel, she was professionally examined by a physician, who diagnosed her condition to be such as to require special and immediate treatment, and it was, therefore, deemed and decided to be advisable to remove her at once to the Lane Hospital. To that hospital she was accordingly removed, and there she remained until the sixth day of October, 1912, the date of her death.

At the time she executed the instrument upon which the defendants, Nellie and Willie Jones, plant their claim to the money in dispute, Vivian was, of course, in an enfeebled physical condition and her signature to the document bore some evidence of that fact.

In addition to the facts embraced in the foregoing statement, these facts were brought out by the testimony: That, when Vivian handed the certificate to her mother on the day she (Vivian) received it from the plaintiff, she said: ''Here, mama, this is yours''; that, for the period of two years from the date of the issuance of the benefit certificate, the defendant, Price, paid all the dues and assessments thereon; that the defendant, Price, paid Vivian's tuition at Heald's

College and paid part of the expenses of Vivian's last illness or her care and treatment at the hospitals.

Then there is some testimony from which the inference might be warranted that Mrs. Price grossly mistreated Vivian while the latter was at her home and had driven her therefrom, and that, in the last illness of the deceased, she (Mrs. Price) did not manifest that tender sympathy for Vivian which naturally and ordinarily springs from a mother's heart when her child is stricken with a painful and mortal illness; that, as a consequence of being expelled from her mother's home, Vivian was without means with which to supply herself with the necessaries of life and that a Mrs. Weston, who held a position in the store in which Vivian was employed, for a time after Vivian's expulsion from her mother's home, furnished the young woman with such means as were necessary for her sustenance. Mrs. Price's alleged want of motherly sympathy for Vivian during the latter's last illness at the Lane Hospital is illustrated by testimony tending to show that Mrs. Price visited her daughter at said hospital on but few occasions and then remaining with her only a short time, and that on the day the young woman passed away, Mrs. Price, fully realizing that her daughter was in a dying condition and at that time the end not far distant, called on Vivian and remained with her for a few moments only and then attended a baseball game at one of the recreation parks in the city of San Francisco; that, at that time and place, having been asked by a personal friend as to the condition of her daughter, replied: "She is dying."

There is also some testimony tending to show that Vivian, after having been driven from her mother's home, became very much embittered against her mother and to several different parties (Mr. Meagher and Mrs. Weston in particular) expressed her intention, several months prior to her death, of substituting her sister and brother as beneficiaries for and in the place of her mother in the certificate issued to her by the plaintiff.

Having now fully stated all the principal facts brought out at the trial—those important to the decision of the question presented here and some that are not—next follows in orderly sequence a consideration of the legal effect of the act of the deceased in making the purported change of beneficiaries.

The appellant insists that, in no view or upon no conceivable consideration of either legal or equitable rules or principles, may the purported or attempted change of beneficiaries by Vivian Jones be sustained, because, in attempting to make such change, she not only wholly failed to follow the method expressly prescribed by the laws of the society for changing beneficiaries, but that the method employed by her to accomplish that purpose is expressly prohibited by and in direct conflict with the last above quoted provision of the laws of said society.

On the other hand, the position of the defendants, Nellie and Willie Jones, is that the procedure required by the constitution and laws of the plaintiff to effect a change of beneficiaries, under a benefit certificate issued by it, was established solely for the benefit and protection of the society itself, and that the admission by it of the indebtedness arising by reason of said certificate or policy of insurance and its offer to pay the amount specified in said certificate to the party or parties adjudged to be entitled thereto by this action are tantamount to a waiver of the prescribed procedure and that, therefore, it does not lie in the mouth of any of the defendants to complain because, in changing beneficiaries, the deceased did not adhere to the rules and regulations of the society in that particular. It is further contended on behalf of Nellie and Willie Jones that the deceased did all that lay within her power, under the conditions which surrounded her at the time she sought to make the substitution, to bring about the desired change; that it was impossible for her to surrender the certificate as originally issued because, when she executed the writing expressing her desire to change the beneficiaries thereunder, it was not in her possession, but that it was then in the custody of her mother, who was the original beneficiary and who, quite naturally, was antagonistic to any steps being taken looking to a change whereby she would be deprived of the benefit money. Upon these considerations, it is argued that equity, applying the doctrine whereby it will consider and treat as done that which ought to be done, will interpose its aid and enforce and give effect to the manifest intention of the deceased, notwithstanding that the rules and regulations of the society for effecting a change of beneficiaries were not observed by her in making such change.

Counsel on both sides of this controversy have displayed commendable ability, industry, and research in the briefing of the case and thus have cited and marshaled for our enlightenment upon the several points pertinent to the legal issue submitted a large array of authorities expounding and applying the general rules applicable to cases of the character of the one with which we are now confronted; yet (and by no means surprisingly), in the long list of adjudicated cases to which attention has thus been directed, none has been found which, as to the facts, is precisely analogous to the case at bar.

The cases and other authorities so cited discuss and decide many points which would, quite naturally, arise in a case involving the main legal question presented for solution here, but their number is so great that a special review of all of them cannot be attempted in this opinion.

It is to be observed, however, that, by the cases relied upon by the parties to these appeals to support their respective positions, the following general propositions are definitely and firmly established: 1. That the constitution and by-laws of mutual benefit or co-operative insurance associations, such as is the plaintiff, and particularly their rules and regulations governing the issuance of benefit certificates and a change of beneficiaries therein and thereunder, become and are an essential and integral part of every such certificate issued by them; 2. That such certificate constitutes a contract between the association and the assured, and that every person insured by such an association is charged with knowledge of its constitution and by-laws and is bound by their requirements; 3. That, where such constitution and laws provide that the assured may, at any time, change the beneficiary under his certificate or policy, the beneficiary named does not acquire an indefeasible right to the benefit money, but becomes such beneficiary subject to the right of the assured to substitute, at any time during the life of the latter, some other person in his place and stead as the beneficiary of his bounty under the policy; 4. That, in such case, a change of beneficiaries can only be effected by a substantially strict compliance with the requirements of the constitution and by-laws in that particular; and 5. That, upon the death of the assured, no change in beneficiaries having been made,

the person named as beneficiary in the certificate, *ipso facto et eo instanti,* acquires a vested right to the benefit money.

Another important and thoroughly established rule may be added to the foregoing and thus stated: That the laws and regulations of mutual benefit associations are made and adopted for their exclusive benefit and protection, and that they may, therefore, in the matter of the change of beneficiaries by the members thereof, waive the formal or prescribed mode for effecting such change; that, when such waiver takes place, it is not within the competence of persons interposing conflicting claims to the benefit money to complain because of noncompliance with the requirements of the laws of the association in making the change.

It will be observed that, under the laws of the plaintiff, to have effectuated a change of beneficiaries according to the letter of said laws, it was necessary for the deceased to have filed with the treasurer of the local lodge a written application therefor, to have either surrendered to said treasurer the original or "old" certificate, or, if it were at the time in the custody of another who refused to deliver it up, to have made and filed an affidavit setting forth the fact that such custodian refused to deliver it to the assured, and to pay a fee of fifty cents. As shown, none of these acts or things was performed or done by Vivian Jones.

There are, however, three recognized exceptions to the general rule requiring an exact compliance with the mode prescribed by the laws of a mutual benefit association for effectuating a change of beneficiaries. These exceptions are stated as follows: 1. If the society has waived a strict compliance with its own rules, and in pursuance of a request of the insured to change his beneficiary, has issued a new certificate, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued; 2. If it is beyond the power of the insured to comply literally with the regulations a court of equity will treat the change as having been made; and 3. If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but before the new certificate is actually issued he dies, a court of equity will treat such certificate as having been issued. (*Supreme Conclave, Royal Adelphia* v. *Cappella,* 41 Fed. 1; *McLaughlin* v. *McLaughlin,* 104 Cal. 171, 178, [43 Am. St.

Rep. 83, 37 Pac. 865]; *Martin* v. *Stubbings*, 126 Ill. 387, [9 Am. St. Rep. 620, 18 N. E. 657]; *Splawn* v. *Chew*, 60 Tex. 532; *Manning* v. *Ancient Order etc.*, 86 Ky. 136, [9 Am. St. Rep. 270, 5 S. W. 385]; *National Mutual Aid Soc.* v. *Lupold*, 101 Pa. St. 111; *Brown* v. *Mansur*, 64 N. H. 39, [5 Atl. 768]; *Knights of Honor*, v. *Watson*, 64 N. H. 517, [15 Atl. 125]; *Byrne* v. *Casey*, 70 Tex. 247, [8 S. W. 38]; *Titsworth* v. *Titsworth*, 40 Kan. 571, [20 Pac. 213]; *Grand Lodge A. O. U. W.* v. *Child*, 70 Mich. 163, [38 N. W. 1]; *National Association* v. *Kirgin*, 28 Mo. App. 80; *Mayer* v. *Equitable etc. Association*, 49 Hun, 336, [2 N. Y. Supp. 79]; *Supreme Lodge* v. *Nairn*, 60 Mich. 44, [26 N. W. 826]; *Kepler* v. *Supreme Lodge*, 45 Hun, 274.)

The question to be determined, then, is whether, notwithstanding the failure of the deceased, in making the purported change of beneficiaries, to comply with the requirements for making such change, the execution by her of the document wherein she expressed the desire that her brother and sister be substituted in her certificate as beneficiaries for and in the place of her mother, and upon which the respondents wholly plant their asserted right to the benefit money in dispute, constituted an act which, when viewed by the light of the circumstances under which it was performed, brings this case within any or all the above stated exceptions to the general rule, or which is one, in other words, that a court of equity will give effect to and so carry out the intention of the deceased as expressed in said instrument.

If Vivian Jones, upon executing the instrument in question, being ill at the time and consequently herself unable to attend to the matter, had instructed or directed Meagher or some other person to file said instrument with the proper officers of the plaintiff and the same had been so filed before her death and thereupon and prior to her decease the association, waiving further or other requisites of the formal mode prescribed for effecting the change which thus she expressed the desire to have made, had made such change or taken the necessary steps to accomplish it, then, under the authorities, such informal method of making the change could not be set up by an adverse claimant as a legal defense against the right of the respondents to the recovery of the benefit money. A step further may be taken. If the document referred to had been filed with the association before the death of Vivian,

and the association had not waived the formal mode of making the change and made none, but nevertheless, as here, recognized its liability to some one under the certificate, and the evidence, as may fairly be said to be true to some extent here, disclosed facts showing substantial, even though purely sentimental reasons in support of or actuating the desire to make the change and there appeared no equitable considerations on the other side sufficiently forceful to overcome such reasons; or, if it appeared that the deceased had, prior to her death, done all that lay within her power, under the circumstances by which she was beset, to accomplish the desired change, then, in either case, the aid of a court of equity could undoubtedly be successfully availed of to enforce the writing and her intention as expressed therein sustained by the application of the equitable doctrine invoked by the respondents.

But none of the conditions thus stated are to be found in this case.

There was no waiver by the association of its requirements in respect of the act of changing beneficiaries. Its act of filing a bill of interpleader and depositing into court the money the title to which is in dispute, to be paid to the claimant or claimants to whom it may be determined that it rightfully belongs, cannot in reason be held to be the equivalent of a waiver by the association of compliance with its rules and regulations respecting the act of changing beneficiaries.

It is true that upon the question whether there can be such waiver in the manner suggested there seems to be a contrariety of opinion between the courts of the several jurisdictions of this country. It is to be conceded that many—indeed, we think, a majority—of the cases which we have examined so hold. But we are of the belief that the sounder view is that there can be no waiver after the death of the assured.

The rule with respect to the right of such associations as the plaintiff to waive the formal mode established by it for bringing about a change of beneficiaries arises from the fact, as before stated, that its rules and regulations are framed alone for its own protection and guidance, and from this fact it follows that a person named as a beneficiary in a benefit certificate issued by it, having no vested interest in

the certificate or benefit money during the lifetime of the assured, has no right to require that the rules of the association regulating a change of beneficiaries shall be conformed to. But, as stated in the case, it is different when a change is sought to be made after the death of the assured, for then the title to the benefit money has vested either in the original beneficiary or some other claimant who may establish a superior right thereto by testing the validity of his claim by some principle or principles of equity. The rights of neither of the claimants can then be impaired by any voluntary act of the association where it acknowledges the existence of a liability under the certificate. Nor will the courts recognize in the association a power which, like the one claimed for it by the respondents, might open up an avenue for the operation of collusion and fraud between it and a spurious claimant as against the original beneficiary.

The payment of the money into court by the association, with a prayer that several claimants of the benefit money whose claims are adverse to each other be required to litigate the right to such money, can and does amount to nothing more than the recognition of the existence of a legal liability against it for the amount specified in the certificate and to a demand that it be protected against a duplicate payment of the money by a judicial determination of the rightful claimant of the fund. This view is in accord with that expressed in a few of the cases cited in the briefs here.

In *Fink* v. *Fink*, 171 N. Y. 616, 622, [64 N. E. 506], the New York Court of Appeals, speaking upon this subject, says: "As a condition precedent to effectuate the change, the member was required to ask the association for a new certificate and to pay it the fee exacted by the by-laws. The association could not make the change unless he requested it, and even then, as it stipulated in the contract with him, 'only on the payment of twenty-five cents.' While it could have waived payment during his life, it did not do so and *it could waive nothing after his death, for by that event the rights of the beneficiary became fixed and unalterable.*"

In *McLaughlin* v. *McLaughlin*, 104 Cal. 171, 176, [43 Am. St. Rep. 83, 37 Pac. 865], our supreme court, speaking of a stipulation executed by the society issuing the benefit certificate and filed in an action brought to determine which of several claimants thereto was entitled to the benefit money

and by which the society disclaimed any and all interest or
right in or to such money and agreed that it be deposited in
a bank to be paid to the person adjudged to be entitled
thereto, has this to say: ''We do not regard the stipulation
as in any way material to a determination of the case.    It
shows only that the councils made no claim to the money and
were willing to pay it into court and let it go to the party or
parties who might be entitled to it.    It is true that during
his life McLaughlin had full control over his interest in the
fund, and had a right at any time to have his certificate
changed by substituting a new beneficiary.    And while he
lived the beneficiaries had no vested interest in the money to
be paid on his death.    But when he died the right to the
money did vest either in the respondent or the appellants,
and the councils had thereafter no power by stipulation or
otherwise to change or affect that right.''

In *Finnell* v. *Franklin,* 55 Colo. 156, [134 Pac. 122], the
following from Niblack's Benefit Societies and Accident In-
surance, sec. 222, is approved: '' . . . The member and the
society may, during the life of the member, waive these re-
quirements, and may agree upon a new beneficiary of the
contract in any manner satisfactory to both parties.    It does
not follow, however, that after the death of a member the so-
ciety may waive these requirements and recognize as valid an
attempted change of beneficiaries made by the member in a
manner different from that set forth in the contract.    The
rights of the parties are controlled by the contract as it was
at the date of the death of the member, and after these rights
have attached by the death of the member no consent or act
of the society can defeat or even affect them. . . . The pay-
ment of the fund into court for the benefit of the person
who may be declared to be entitled to it in no way improves
or prejudices the legal position of either the original or the
substituted beneficiary.''

It being thus established that there was no waiver by the
plaintiff of the formal or prescribed mode for making a
change of beneficiaries in this case, it follows that there must
be found, to support the claim of the respondents to the
benefit fund, some other considerations arising from the cir-
cumstances of the case which will justify a court of equity
in interposing its power and so executing the desire or in-
tention of the deceased as manifested by means of the said

writing. The record here does not disclose such considerations.

As is well said, in *Rollins* v. *McHatton,* 16 Colo. 203, [27 Pac. 254, 25 Am. St. Rep. 260] : ''While equity may aid an attempted but incompleted change in that respect, it does so only when .the assured has done his part towards perfecting ' the substitution in accordance with the method prescribed, but owing to circumstances over which he has no control the change is not entirely consummated at the time of his death. . . . But it is an essential prerequisite to the interposition of equity that the assured has in good faith attempted to comply with the prescribed mode of substitution.'' (See, also, *Finnell* v. *Franklin,* 55 Colo. 156, [134 Pac. 122].)

The deceased was charged with knowledge of the course which the by-laws of the society required to be followed to make the change. The course so prescribed was a part of her contract with the society. She did not pursue such course, nor take any step of the several required to accomplish that result. She did not, in brief, do all that lay within her power to effect a change in accordance with her expressed wish. Meagher said that for a period of five months prior to her death she intermittently expressed an intention to make such change. Mrs. Weston likewise testified. There is no evidence that she ever receded from the intention so expressed up to the time she subscribed her name to the instrument in question. She had ample opportunity to have performed all the acts required by the laws of the society to bring about the change, except, perhaps, the act of surrendering the old certificate which was then and at all times in the hands of a party undoubtedly hostile to a change of beneficiaries, and the omission to perform that act she could have supplied by filing with her application for a change the affidavit provided for by the by-laws in such case. Even on the day she executed the writing, having then the mental capacity to express in writing her desire to make the change, she could with equal ability have directed some one to file the writing with the proper officers of the local lodge of the plaintiff, as the by-laws require, and therewith have filed an affidavit setting forth the reason for the nonsurrender of the old certificate, and have paid the required fee. (*McLaughlin* v. *McLaughlin,* 104 Cal. 171, [43 Am. St. Rep. 83, 37 Pac. 865].) These acts would have afforded some ground for the

interposition of equity. But all that she did do was merely to express her intention to make the change, and "mere intention to make a change is not enough" to win the favor of equity in such a case and under such circumstances as are present here. (*Fink* v. *Fink,* 171 N. Y., 616, 622, [64 N. E. 506].)

It is very clear that the instrument signed by the deceased, even if it had been executed and attested according to the formalities prescribed by our law for the execution and attestation of wills (Civ. Code, sec. 1276), cannot operate as a testamentary disposition of the fund, nor, as a will, to change the beneficiaries. Besides the consideration that the laws of the plaintiff expressly prohibit such testamentary disposition, there is another insuperable objection to such mode of disposing of the benefit money in this: That a will cannot take effect until after the death of the testator and, of course upon property only belonging to him, and therefore, since, in a case where, as here, no change of beneficiaries has been made according to the laws of the society, or permitted by an informal method under a waiver of said laws, the interest of the beneficiary designated in the certificate in the benefit fund becomes vested, *eo instanti,* upon the death of the assured. In other words, the title to the benefit money vests in the beneficiary immediately upon the death of the assured, and, of course, any provision in the last will of the latter purporting or attempting to make a different disposal of the fund would be as ineffectual for the purpose for which it was intended as would be a provision attempting thus to dispose of property which the testator never owned or had any interest in.

Nor can the document be upheld as a direction to the association to make the change, for, as before explained, the fact of the desired change was never in any manner communicated to the association during the lifetime of the assured, and, therefore, the consent of the association was not and could not be obtained for a change of beneficiaries in that informal manner.

The conclusion to which we have been persuaded in this case is not in conflict with any of the cases cited by counsel for the respondents in which changes of beneficiaries without complying with the rules and regulations of the associations in that particular have been sustained by the application of the

principles of equity. In all the cases so cited knowledge of the intended change was in some manner brought home to the association during the life of the assured and circumstances preventing full compliance with such regulations were shown to have intervened which justly called for an adjudication of the rights of the parties upon equitable considerations. No case has been cited and, in our opinion, none can be found, in which it has been held that the mere expression of an intention to make the change, either orally or in writing, without communicating the fact of the desire to make the change to the association during the life of the assured, and, no obstacle intervening to prevent it, without a faithful effort upon the part of the assured himself to bring about the change, is sufficient to justify a court of equity in declaring that thus a change of beneficiaries has been effected.

It may be that the defendant, Price, mistreated the assured or failed to bestow upon the young woman in her last illness those tender ministrations which it was her natural duty to perform, and that thus Vivian was inspired by a desire and an intention to deprive her mother of the fruits of her bounty; yet motive alone cannot impart to an unexecuted intention the force of a completed contract. Indeed, in this case, the effect of the proof of motive was only to prove the intention which, it may be conceded for the purpose of this case, was established.

But the proof upon the question of the treatment of Vivian by her mother is by no means one-sided. There was, as has been shown, some testimony tending to show very considerate and liberal treatment of Vivian by Mrs. Price. No testimony in denial of Mrs. Price's statement that she had paid Vivian's tuition at school, the dues on the certificate and part of the expenses of her last illness was offered or received. And it stands in the record undisputed that Vivian lived at her mother's home the greater part of the time she resided in San Francisco.

However, these last considerations are, as stated, quite immaterial to the decision of the issue involved in these appeals.

Upon the circumstances under which the purported change was made and the principles of law governing such transactions, we are constrained to hold that the result reached by the jury cannot be sustained.

Accordingly, the judgment is reversed. The orders appealed from were properly made and they are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.