[L. A. No. 3635. Department Two.—March 8, 1916.]

ANDREW ELLIOTT and NELLIE ELLIOTT, Respondents, v. FRANKFORT MARINE, ACCIDENT AND PLATE GLASS INSURANCE COMPANY OF FRANKFORT-ON-THE-MAIN, GERMANY (a Corporation), Appellant.

LIFE INSURANCE—SOLICITING AGENT CANNOT WAIVE TERMS OF POLICY.— Where a policy of life insurance recites that no agent may waive or alter its terms, a mere soliciting agent of the insuring company may not bind it by oral waivers in such manner as to estop it from defending on the ground that the representations in the application are false and fraudulent.

ID. — FALSE REPRESENTATIONS AND CONCEALMENT — PROFESSIONAL GAMBLER DESCRIBED AS "CAPITALIST"—CONCEALMENT OF ADULTEROUS RELATIONS WITH WOMEN.—An applicant for life insurance is guilty of false representations and of concealment of material facts, in stating in his application that his business is that of a "capitalist," when in fact his occupation in life is that of a professional gambler, and in stating, in reply to a question designed to elicit information regarding his habits of life, that "my habits of life are correct and regular, and I am in sound condition mentally and physically," when in fact he was living in promiscuous and adulterous relations with women.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

Haas & Dunnigan, Flint, Gray & Barker, and Gray, Barker & Bowen, for Appellant.

Frank C. Hill, and George S. Hupp, for Respondents.

MELVIN, J.—Plaintiff Nellie Elliott, mother of C. A. Jewell, now deceased, was beneficiary of a policy of life insurance issued to said Jewell. She and her husband brought action, and judgment was given against the company for five thousand dollars, the amount of the policy. Defendant appeals from the judgment and from an order denying its motion for a new trial. The term of the policy was from May 31, 1910, to May 31, 1911. The insured was killed by accident, in Los Angeles, on December 16, 1910, while driving an automobile.

The insurance company defended against the claim of plaintiffs upon the grounds of fraud, misrepresentation, concealment, and breach of warranties on the part of the insured.

By the terms of the policy it was issued not only in consideration of the premium, but also in consideration of the warranties indorsed on the contract and made a part thereof, which statements, it was provided, the insured made and warranted to be true by the acceptance of the policy. The agreements, warranties, and conditions contained in the policy were by its terms to be considered conditions precedent.

The consent of Jewell to insure his life with the defendant was obtained by one Paul Rowan, an employee of R. A. Rowan & Co., a corporation representing defendant in Los Angeles. Jewell's written application was forwarded to San Francisco, and the policy was issued from defendant's office in that city. This, as the court found, was in accordance with the power of R. A. Rowan & Co. The authority to issue policies was vested in the general agent, Mr. Duncan, in San Francisco. The blank used in preparing Mr. Jewell's application seems to have been designed for a report upon a person previously insured rather than for an original request for insurance, but it was properly treated by the court as an "application for insurance." Evidently it was so understood by the signer. It contained this language:

"The following is an exact copy of the Schedule of Warranties in the policy delivered to the assured. It includes all entries made in said schedule and nothing more." Then followed the name and height of the applicant, his residence given as 239 W. Forty-ninth Street, Los Angeles, the name of the beneficiary, his mother, and her residence stated to be the same as his own. It is not necessary to specify all of the

entries.   For the purposes of this opinion we need quote only
the fourth, fifth, sixth and eleventh, which were as follows:

"4. I am with capitalist (name of firm or corporation)
Whose business is your own Located at Los Angeles street,
city of Cal., state of Cal.

"5. My occupation is that of a capitalist and the duties of
my occupation are fully described as follows:

"6. My income per week exceeds the gross amount of weekly
indemnity under all accident or health policies carried by me.
Yes. . . .

"11. My habits of life are correct and temperate, and I am
in sound condition mentally and physically, except as herein
stated.   Good all the time."   The closing part of this docu-
ment was as follows:

"I recommend the risk, and state the schedule of warranties
in the policy was filled out precisely as above, and the correct
amounts stated in the policy, which was issued to the assured
on the 31 day of May, 1910.

"General Agent, at R. A. Rowan Co.

"Sub Agent or Broker, at ——

"PAUL ROWAN.

"C. A. JEWELL."

The court found that the word "capitalist" was inserted by
Mr. Rowan without consulting Mr. Jewell, and that "the said
Carl Jewell then said: 'Hold on, what do you mean by capi-
talist?' and Paul Rowan then said: 'Mr. Jewell, a man that
has twenty thousand dollars to lend, that owns an automobile
and wears large diamonds and dresses well and lives around
the best of hotels and travels around Southern California, I
would call a capitalist.   A capitalist is a man who has money
to lend, drives around in automobiles, lives in luxury and
spends money the way you do.   I do not see how I could put
it any other way.'   C. A. Jewell then said: 'How much money
does a capitalist have to have?'   Rowan then said: 'Some of
them have five hundred thousand dollars or better and others
I know only have a few hundred dollars and are still called
capitalists, and I cannot see why you should not go under that
heading.'   And thereupon Mr. Jewell said: 'All right, let
her ride.' "

Similarly, as the court found, the words "Good all the
time" were written by Mr. Rowan, whereupon the following
conversation occurred: "Said Jewell said: 'I do not know how

to answer that question,' and the said Rowan said: 'That is the customary way that I answer those questions. I know you are not a drinking man.' " The applicant then signed the paper and another blank which was not filled in. This latter writing was afterward prepared by Mr. Rowan and sent to the general agent at San Francisco, but the two documents did not exactly correspond. The entries in the second paper with reference to occupation were made to read as follows:

"I am with capitalist (name of firm or corporation) Whose business is my own—loaning money. Located at Los Angeles street, city of Los Angeles, state of California.

"(5) My occupation is that of a capitalist and the duties of my occupation are fully described as follows: Taking up mortgages. Loaning money on real estate, here in Los Angeles and San Francisco." The statement regarding habits was as follows:

"My habits of life are correct and temperate, and I am in sound condition mentally and physically, except as herein stated are always good as can be." In preparing the policy the defendant's representative in San Francisco inserted the warranties identical with the representations contained in the paper sent to him—that is the one which had been filled in by Mr. Rowan after it had been signed by the applicant—and the policy was received, accepted, and retained by Mr. Jewell. The policy contained the following clauses under the caption "General Agreements":

"No claim shall be valid under this policy if the claimant has concealed or misrepresented any material fact or circumstance concerning such claim, nor in case of any fraud or false swearing by the claimant touching any matter relating to his claim or insurance."

"If any of the statements made in the Schedule of Warranties indorsed hereon are untrue, this policy shall be void."

"The terms of this policy cannot be waived or altered by any agent or representative, and no modification or alteration of any of its provisions shall be valid unless expressed in a written indorsement hereon signed by the United States manager."

The defense was that Jewell had made false warranties in the following particulars: That he was not a capitalist; that he never was engaged in taking up mortgages on real estate;

that his only business was gambling, making books, and selling chances in various games and "sporting events"; that his income was not as represented; that his habits of life were lewd and dissolute; and that his residence was not as represented but that, although a married man, he lived in open and notorious fashion with a woman not his wife, at a house in Ocean Park.

The court found that the subagent, Paul Rowan, had known well and had been on terms of intimacy with Jewell during the year prior to May 31, 1910; that Rowan had seen large sums of money in Jewell's possession, and had been informed by the latter that he desired to loan twenty thousand dollars upon a first mortgage. There are other elaborate findings with reference to the possession by Jewell of other evidences of wealth, and of his habit of spending large sums on his personal expenses of living. Another finding which is in accord with a stipulation of fact by plaintiff's counsel was as follows: "That on said 31st day of May, 1910, and for a considerable time prior thereto, the said Paul Rowan knew, and the court finds it to be a fact, that the said C. A. Jewell was a man who was in the habit of making bets on various events, and that the said Jewell frequently had illicit sexual relations with women other than his wife, and that upon one occasion the said Jewell introduced to said Rowan as his wife a woman who was not in fact Jewell's wife, and that said Rowan knew before taking the application herein referred to, that said woman was not the wife of said Jewell." The court found Jewell's residence to have been at his mother's home as stated in the application, that his income exceeded twenty-five dollars a week as therein set forth, and that the other representations were not made for the purpose of securing the policy. There were conclusions of law that Paul Rowan was the servant of R. A. Rowan & Co., the agents of defendant for soliciting applications, forwarding them to San Francisco; receiving the policies issued thereon by the general agent D. Duncan; delivering said policies; and collecting the premiums. There was also a conclusion of law to the effect that Rowan acted as the agent of the defendant company; that his knowledge was the company's; and that because of said knowledge the defendant was estopped from denying the truth of the warranties and representations made by Jewell in his application for insurance regarding his occupation and his habits of life.

Appellant contends that (1) a mere soliciting agent may not bind his principal in such manner as to work an estoppel, and that (2) the false representations of and suppressions of fact by Jewell were material.

That such an agent as Rowan admittedly was—a mere soliciting agent—may not bind the insuring corporation in such manner as to estop it from defending upon the ground that the representations in the application are false and fraudulent is well settled in California. (*Madsen* v. *Maryland Casualty Co.*, 168 Cal. 204–206, [142 Pac. 51]; *Sharman* v. *Continental Insurance Co.*, 167 Cal. 117–125, [52 L. R. A. (N. S.) 670, 138 Pac. 708]; *Iverson* v. *Metropolitan Life Insurance Co.*, 151 Cal. 746, [13 L. R. A. (N. S.) 866, 91 Pac. 609]; *Fidelity and Casualty Co.* v. *Fresno Flume and Irrigation Co.*, 161 Cal. 466–470, [37 L. R. A. (N. S.) 322, 119 Pac. 646].) While it is true that a company issuing insurance may in some cases be bound by the representations of an ostensible agent, the principle announced by the authorities cited above is that where, as in this case, the policy recites that no agent may waive or alter its terms, the holder of the policy may not vary his contract, nor may his beneficiary do so, by proof or oral waivers by the soliciting agent. We must conclude, therefore, that the insurance company may take advantage of any false or fraudulent warranties made by the insured. As we have seen, several alleged misrepresentations and suppressions of the truth material to this controversy are pleaded by the answer, and we will now proceed to examine some of them.

Most important of these was the false representation that he was a capitalist. Whether we take the application which he signed after it was filled or the one to which he subscribed his name and upon which Rowan·made his interpretation of the meaning of the answers, the fact remains that he deliberately accepted the designation which Rowan furnished. It is not necessary to enter upon any refined discussion of the shades of meaning of the word "capitalist." Respondent insists upon a definition which merely involves possession of large wealth and appellant upon one which signifies a person having an income from his investments. It makes no difference which definition we adopt. Either involves an exclusive dependence upon accumulated property, and the evidence in this case, some of it resting upon stipulation, is that the

young man's occupation in life was that of a professional gambler. It is not material that Rowan suggested the style of "capitalist" in lieu of the shorter and less reputable one of "gambler." Jewell knew that the word was an euphemism behind which lurked his real business. Whether he had large sums of money from his mistress, or from his gambling operations, or from other sources, and was in that sense a "capitalist," the potent fact remains that he failed to announce his principal occupation. The insurance company was entitled to a full disclosure upon this matter. It was highly material that the truth should be known, for it takes no expert in vital statistics to convince a court that a professional gambler who frequents poolrooms and like places, and himself becomes a commissioner for bets upon horse-races, prizefights, and similar events, is not so good a "risk" as one who depends for support upon the proceeds or the principal of an ample fortune.

It is argued that although admittedly Jewell was morally not altogether upright, he was at least not a user of liquor or narcotics, and that his representation touching his good habits referred to his temperance in these particulars. Undoubtedly the purpose of eliciting information regarding the habits of life of an applicant for insurance is not a moral. but a very practical one. The insurer does not desire policy-holders whose habits tend to weaken their constitutions or to expose them to danger of death by violence. Courts should not and do not hold applicants to a lofty standard of morality in qualifying for life insurance. But here we are dealing with the case of an applicant whose promiscuity was admitted, and whose adulterous relations with a woman, whom he introduced as his wife, were found by the court pursuant to solemn stipulation of counsel for plaintiff herein. Such a person is not a desirable subject of insurance from the standpoint of a company like the defendant, if for no other reason because he may become, at any time, the subject of the vengeance of his deserted wife or her insulted kinsmen.

It is clear, therefore, that the applicant for insurance was guilty both of misrepresentation and of concealment regarding material facts, that is such facts, knowledge or ignorance of which would materially influence the judgment of the insurer in making the contract or fixing the premium.

Our conclusions upon the branches of the case discussed above make it unnecessary to consider other alleged errors. The judgment and order are reversed.

Henshaw, J., and Lorigan, J., concurred.