[S. F. No. 7852. In Bank.—April 4, 1919.]

FLORA A. VALENTINE, Respondent, v. HEAD CAMP, PACIFIC JURISDICTION, WOODMEN OF THE WORLD, Appellant.

[1] FRATERNAL INSURANCE ORGANIZATION — POWERS OF LOCAL CAMP CLERK.—Where, under the provisions of the constitution of a mutual fraternal organization, a local camp clerk cannot be held to be anything more than a special agent of the organization with defined powers which were known to the members, he cannot waive any requirement of the laws of the organization, or by any act or course of conduct create an estoppel against it.

[2] ID.—FAILURE TO PAY ASSESSMENTS AS REQUIRED BY LAW OF ORGANIZATION — SUSPENSION OF BENEFIT CERTIFICATE. — Where the local camp clerk of a fraternal organization had no power by any course of conduct to waive the requirements of the law of the society as to the time of payment of the assessments or the consequences thereof, the failure of a member to pay assessments as required operated *ipso facto* to remove him from good standing, and to suspend his benefit certificate.

[3] ID.—REINSTATEMENT OF MEMBER — APPLICATION — WARRANTY OF SOUND BODILY HEALTH — FALSE STATEMENT — INEFFECTIVE REINSTATEMENT.—Where the law of a fraternal organization required as a condition precedent to reinstatement the presentation of an application including an express warranty of present sound bodily health, a statement in such an application that "I certify, warrant and represent that I am in good sound bodily health," is clearly one upon the literal truth or fulfillment of which the validity of the contract depended and amounted to a warranty, and where the statement was false, there was no effective reinstatement.

[4] ID.—FALSITY OF WARRANTY—KNOWLEDGE OF LOCAL CAMP CLERK—ORGANIZATION NOT ESTOPPED.—Knowledge of the local camp clerk of the falsity of such a warranty is an immaterial factor, since he could not by any course of conduct or possession of knowledge bind the organization in such a manner as to estop it from claiming that the warranty was false.

[5] ID.—MONEY PAID ON ATTEMPTED REINSTATEMENT — RETENTION BY LOCAL CAMP CLERK — ORGANIZATION NOT ESTOPPED — LACK OF KNOWLEDGE UNTIL AFTER DEATH OF MEMBER.—The organization is not estopped from disputing the effectiveness of the reinstatement of a member by the fact that the local camp clerk retained money paid by the wife of the member upon his attempted reinstatement,

which was paid a few days before the death of the member, where such death occurred before the head camp had knowledge of the payment.

APPEAL from a judgment of the Superior Court of Alameda County.  N. D. Arnot, Judge Presiding.  Reversed.

The facts are stated in the opinion of the court.

Robinson & Robinson, Harry L. Price and J. C. Nichols for Appellant.

Stanley Moore, Geo. K. Ford and Wilder Wight for Respondent.

ANGELLOTTI, C. J.—This action was brought by plaintiff to recover upon a fraternal benefit certificate issued by defendant to her husband, Clarence A. Valentine, which provided for payment to her upon his death, if then in good standing, of the sum of three thousand dollars.  Judgment was given in favor of the plaintiff by the trial court, and we have here an appeal by defendant from such judgment.

The defendant is a mutual fraternal organization maintained on the lodge plan, purely for the mutual benefit of its members, and, among other things, to provide and maintain, by means of assessments on its members, a benefit fund from which is paid to designated relatives or dependents of each deceased member who is in good standing at the time of his death, such sum, either one thousand dollars, two thousand dollars or three thousand dollars, as is specified in his benefit certificate.  It consists of a national or supreme body, known as the Head Camp, and local organizations or lodges, known as camps.  As is usual in this kind of association, the supreme authority of the association is vested in the supreme body, the Head Camp, which at its Head Camp sessions, composed of the officers of the supreme body, delegates from the local camps, and past head consuls, made its laws, elected its officers, etc.  The matters of the issuance of benefit certificates, levy of assessments, etc., were in the hands of the Head Camp, the business relative thereto being conducted by the officers of the Head Camp in accord with the provisions of the constitution and by-laws adopted by the Head Camp sessions.  The collection of the assessments was in the hands of the local camps,

and particularly of the clerks of the local camps, who received from the members of their respective camps amounts due for assessments and local camp dues, forwarding the former as collected to the proper Head Camp officers, who were required to keep the accounts showing the situation as to each member.

Mr. Valentine became a member of defendant association in the year 1901, his benefit certificate being dated January 16, 1901, and subsequently affiliated with the local camp at Oakland, California, known as "Bay Tree Camp No. 640." He died on August 22, 1912. The controversy in this case is as to his good standing as a member of defendant association at the time of his death, the terms of his benefit certificate expressly providing, as required by the constitution of the order, that the beneficiary is entitled to "participate in its benefit fund after his death when in good standing and not otherwise," and that the certificate will not be in force at any time when the member stands suspended and is not in good standing pursuant to the constitution and by-laws "now in force or hereafter regularly adopted and in force at the time of his death." To remain in good standing it was imperatively required by the constitution and by-laws of the order that the member pay to the clerk of his camp every assessment levied and called during the month in which it is payable, failure to do this *ipso facto* putting the member out of good standing. This requirement, which was one essential to the maintenance of the mutual benefit fund from which assessments were to be paid, was emphasized by repeated provisions in the constitution and by-laws of defendant, as well as in the benefit certificates issued by it. Apparently the only exception provided was one for the benefit of a member who, while in good standing, becomes sick or disabled, and while still in good standing properly notified the clerk of the local camp thereof. Such a member may be carried by such local camp for a limited time, the latter remitting to the Head Camp from the local camp funds the amount of his assessments as the same accrue. This provision, however, has no materiality here. From May, 1911, until two days before his death, Mr. Valentine was continuously delinquent in his payments on account of assessments to the clerk of the local camp, making small payments on account thereof from time to time to the clerk of the local camp to some time in June,

1912. The clerk of the local camp, in violation of the laws of the order, had continued to carry him as in good standing to August 1, 1912, at which time several assessments remained unpaid by him, the amount of all of which, however, except that due for July, 1912, had been advanced for him by the clerk of the local camp, and forwarded by such clerk to the Head Camp to his credit, with the result that in so far as the Head Camp was informed he was regularly paying his assessments as required by the laws of the order. The amount of the assessment due in July, 1912, was not so advanced by the clerk, nor forwarded to the Head Camp. On August 14, 1912, such clerk in his report sent to the Head Camp reported Mr. Valentine as delinquent for failure to pay the July assessment. So far as appears in the record, this was the first intimation to the Head Camp of any delinquency at any time on the part of Mr. Valentine, the reports theretofore received showing him as regularly paying all assessments. On August 17, 1912, while engaged in his trade as a carpenter, he fell from a ladder a distance of about twenty feet. His neck was broken by this fall. The full extent of his injury was not at once known, and in view of the findings of the trial court it will be assumed that it was not known until after August 20, 1912. He was taken to a hospital, where he remained until August 22, 1912, when he died as a result of the injury. On August 19, 1912, Mrs. Valentine paid to the clerk of the local camp all amounts accruing for assessments and dues to September 1, 1912, including the July assessment, the total so paid being $23.20. On August 20, 1912, she paid such clerk the further sum of $2.95 as advanced assessment for September, 1912. The law of the order provided that a suspended benefit member could become reinstated within a limited time after his suspension by complying with certain specified conditions, and not otherwise, one of which was the delivery by the member to the clerk of the local camp of an application for reinstatement, certifying, warranting, and representing that he was then "in good, sound bodily health," and another of which was the payment of all arrearages. The benefit certificate in terms provided, as required by the laws of the order, that if any assessment was not paid within the time allowed, "then this certificate shall be null and void and continue so until he is reinstated as required by the Head Camp Constitution and By-Laws of his Camp." When the

payment of August 19th was made by Mrs. Valentine, the clerk of the local camp informed her that a reinstatement application must be signed by Mr. Valentine and delivered to him, and he furnished Mrs. Valentine a form for that purpose, which he himself had filled in with name and date. It was not the form prescribed by the laws of the order, the difference being in the omission of a final paragraph to the effect that the member agreed that the representation of present sound bodily health is a strict warranty, and that if his death occurred within one year as the result of any disease with which he was then afflicted, no beneficiary shall be entitled to receive benefits. The constitution provided in effect that no reinstatement could be accomplished except by the presentation of an application in the exact form required thereby. Mrs. Valentine procured Mr. Valentine's signature to this application so furnished and delivered it to the clerk the next day. This application, as required by the law of the order, stated: "I, C. A. Valentine, a delinquent and suspended benefit member, hereby request to be reinstated, and offer herewith all arrearages of benefit assessments, equalization payment and camp dues. I certify, warrant, and represent that I am in sound bodily health. . . . " When the payments were made and the application for reinstatement was delivered by Mrs. Valentine to the clerk of the local camp, the latter was informed by her of the accident and that Mr. Valentine was seriously injured. The evidence fairly shows that there was then no attempted concealment of any of the facts from the clerk, and that no one then knew that the neck was "broken." But the clerk did know from the information given him that Mr. Valentine was not in "sound bodily health." Unquestionably his sympathies were with Mrs. Valentine in the effort to put Mr. Valentine in good standing. The amounts paid by Mrs. Valentine in August, 1912, were never forwarded to the Head Camp by the local clerk, but appear to be still in his custody. This was doubtless due to the almost immediate death of Mr. Valentine. His statement that he informally offered to return the money is disputed by Mrs. Valentine. However, he did within a day or two of Mr. Valentine's death, advance Mrs. Valentine $50, none of which has been returned. No Head Camp officer had any notice or knowledge of any attempted reinstatement until after the death of Mr. Valentine. At the time Mr. Valentine became a

member of the order the constitution of defendant provided in express terms, as it has ever since, that "camp clerks and bankers are by this constitution expressly made agents of the camp and of the several members thereof, and not agents of the Head Camp." As amended and revised at the Head Camp session in 1910, which it will be observed was prior to any delinquency on the part of Mr. Valentine, the constitution was made to provide with relation to "every benefit certificate," "that no agent or representative of this society nor any officer or member of a local camp has the right or power, by any statement, agreement or promise, or by any method of transacting business with its members, to waive a strict observance and compliance with the laws, rules and regulations of this society as set forth in this Constitution, and By-laws of his Camp, and such amendment or alteration therein as may be hereafter made." It was expressly declared in the section including this provision, among others, that the conditions enumerated "shall apply to every Benefit Certificate and shall be binding on both the members and this Order." (Sec. 118.) At the same time it was provided in section 130 that noncompliance with any of the conditions named in the laws of the society shall be an absolute bar to any claim on the benefit fund thereof "under or by virtue of any benefit certificate that may have been issued, or that may hereafter be issued to an applicant, or by reason of any steps taken by an applicant to entitle him to the same, or by a subordinate camp or member thereof, and no officer or member of the Head Camp has any authority to change, alter, modify, or waive the foregoing requirements, or the consequences thereof in any manner."

The theory upon which the trial court awarded judgment to plaintiff was twofold, being first, that the imperative conditions and provisions of the laws of the order and the benefit certificate in the matter of the payment of assessments, etc., were waived by defendant by the course of conduct in receiving payments from Mr. Valentine from May, 1911, notwithstanding his delinquency, with the result that he was in good standing at all times up to the time of his death; and, second, that if out of good standing because of nonpayment of assessments, he was reinstated August 20th, and died in good standing.

It cannot be doubted that the laws of the defendant constituted a part of the contract between Valentine and defendant (see *Butler* v. *Grand Lodge*, 146 Cal. 172, 175, [79 Pac. 861]), or that Valentine was charged with full knowledge of the provisions of the constitution of defendant (see *Supreme Lodge* v. *Price*, 27 Cal. App. 607, 616, [150 Pac. 803]). **[1]** These propositions are so well settled as to require no citation of authority. In this connection it must further be held that the express provisions written into the constitution of defendant in 1910 to the effect that no officer or member of a local camp or of the Head Camp has any power or authority to waive any of the requirements of the constitution or the consequences thereof in any way, were applicable. As we have seen, under the terms of the original contract, the power to amend the constitution and by-laws was expressly reserved, and the question of good standing at the time of death was to be determined in accord with the provisions of the constitution and by-laws as they then were or might be subsequently amended. The amendments, as applied to Valentine's case, were prior to any delinquency and were not such as to impair any vested right. They were mere regulations of the internal affairs of the society, in no degree affecting any right of the insured under his contract or in any way impairing the substance of his contract. They simply put into clear and unambiguous express provisions of the constitution a limitation upon the power and authority of any officer or member of a local camp, or any officer of the Head Camp, to waive any of the requirements of the contract. Perhaps this limitation was fairly inferable before, but in view of the amendments we need not discuss that question. The power of the Head Camp to make such amendments applicable to those already members and to the benefit certificates of such members, in so far as all future conduct was concerned, cannot be doubted. We have in mind the rule enunciated in many states, including this state (see *Bornstein* v. *District Grand Lodge*, 2 Cal. App. 624, 628, [84 Pac. 271], to the effect that alterations in the laws will not be construed to operate retrospectively unless the intent that they shall so operate clearly appears. But we give to these amendments in applying them to Valentine's case no real retrospective or retroactive operation. And we further are of the opinion that the intent to make the amendments applicable to every

benefit certificate outstanding was clearly and definitely expressed. In addition to these express provisions of the amendments we have the provision of the constitution that was in force when the benefit certificate of Valentine was issued, to the effect that camp clerks are not agents of the Head Camp, but only agents of their local camps and of the several members thereof.

In view of these provisions it cannot be held that the local camp clerk was, to use the language of *Marshall* v. *Grand Lodge,* 133 Cal. 686, 692, [66 Pac. 25], "anything more than a special agent of defendant, with defined powers which were known to the members." Whatever force there may be in the theory that notwithstanding a provision declaring a local camp officer to be the agent of the members and not of the Head Camp, the law will nevertheless hold him to be the agent of the Head Camp for the transmission of money properly paid him by a member in accord with the law of the society (see *Knights of Pythias* v. *Withers,* 177 U. S. 260, [44 L. Ed. 762, 20 Sup. Ct. Rep. 611, see, also, Rose's U. S. Notes]). Both principle and the great weight of authority preclude a conclusion that, in the face of the provisions of the constitution we have quoted, the local camp clerk could waive any requirement of the law, or, by any act or course of conduct, create any estoppel against defendant. (See *Hartman* v. *National Council,* 76 Or. 153, [L. R. A. 1915E, 152, 147 Pac. 931].) As was held in *Northern Assurance Co.* v. *Grand View Bldg. Assn.,* 183 U. S. 308, [46 L. Ed. 213, 22 Sup. Ct. Rep. 133, see, also, Rose's U. S. Notes], it is competent for parties to provide in an insurance policy that the power of agents of the company be limited, and where a limitation is expressed it is binding in the absence of waiver or ratification *by the company* with knowledge of the facts. This is the settled doctrine in California both as to ordinary life insurance companies (see *Elliott* v. *Frankfort Ins. Co.,* 172 Cal. 261, [L. R. A. 1916F, 1026, 156 Pac. 481]), and as to fraternal insurance societies. (*Marshall* v. *Grand Lodge,* 133 Cal. 686, [66 Pac. 25].)

[2] The local camp clerk having no power by any course of conduct to waive the requirements of the law of the society as to the time of the payment of the assessments or the consequences thereof, the failure of Valentine to pay assessments as required operated *ipso facto* to remove him from good standing, and consequently as a suspension of his benefit cer-

tificate. (See *Butler* v. *Grand Lodge,* 146 Cal. 172, [79 Pac. 861] ; *Marshall* v. *Grand Lodge, supra.*) This was the situation when he was injured on August 17, 1912. Unless reinstated prior to his death, he was not in good standing at the time of his death, with the result that, under the terms of his benefit certificate, his beneficiary could not participate in the benefit fund. The question, then, is whether there was an effective reinstatement. It seems perfectly clear to us that this question must be answered in the negative. Such a reinstatement could be accomplished only by a full compliance with the law of the society relative to reinstatement (*Butler* v. *Grand Lodge, supra; Marshall* v. *Grand Lodge, supra*). The law in force at all times required as a condition precedent to reinstatement, the presentation of an application including an express warranty of present sound bodily health. As we have seen, the local camp clerk had no power by any act or course of conduct to waive the presentation of the application required by the law. The required application was one in which the member was not only made to declare: ''I certify, warrant and represent that I am in good sound bodily health,'' but also that, ''I agree that this representation is a strict warranty.'' The latter provision was not in fact contained in the application presented on behalf of Valentine, with the result that the precise application required by the law was not presented. The law providing that ''no attempted reinstatement by the clerk of the camp without such reinstatement application shall reinstate a suspended member or entitle his beneficiaries to receive any benefit,'' it may well be claimed that for this reason alone there was no reinstatement here. Certainly this claim is good if the part omitted was at all material. [3] But we think that the application as presented contained such a warranty in the statement, also required by law, that ''I certify, warrant and represent that I am in good sound bodily health.'' This statement clearly was one upon the literal truth or fulfillment of which the validity of the contract depended, and amounted to a warranty. (See *Hogins* v. *Supreme Council,* 76 Cal. 109, 112,[9 Am. St. Rep. 173, 18 Pac. 125] ; *Caldwell* v. *Grand Lodge,* 148 Cal. 195, 199, [113 Am. St. Rep. 219, 7 Ann. Cas. 356, 2 L. R. A. (N. S.) 653, 82 Pac. 781].) This warranty, as we have seen, was absolutely false. ''By a warranty the insured stipulates for the absolute truth of the statement made'' (*Hogins* v. *Supreme*

*Council, supra*), and its falsity is necessarily a defense to the contract procured by the making thereof.   There could be no effective reinstatement based upon an application containing a warranty that was in fact false, in the absence of an effective waiver of the falsity by the defendant Head Camp.   Plaintiff relies upon the fact that the local camp clerk had knowledge of the falsity of the warranty.   [4]   In view of what we have said as to the limitations on the power of the camp clerk it is clear that this knowledge on the part of that officer is an immaterial factor.   He could not by any course of conduct or possession of knowledge bind defendant in such a manner as to estop it from defending upon the ground that the warranty was false.   This is substantially the effect of what is said in *Elliott* v. *Frankfort Marine Ins. Co.,* 172 Cal. 261, 266, [L. R. A. 1916F, 1026, 156 Pac. 481].   In view of his limited powers his knowledge was not the knowledge of defendant.   (See *Iverson* v. *Metropolitan Life Ins. Co.,* 151 Cal. 746, 751, [13 L. R. A. (N. S.) 866, 91 Pac. 609].)   No officer of the Head Camp had any knowledge whatever as to the matter, no information even that there had been an attempted reinstatement, until after the death of Valentine.   To our minds there is no escape from the conclusion that the attempted reinstatement was ineffective for any purpose, and that Valentine was not in good standing on August 22, 1912, when he died as the result of the injury received on August 17, 1912.

[5]   Some reliance is placed upon the retention by the local camp clerk of the money paid by Mrs. Valentine upon the attempted reinstatement as constituting a waiver of all objections by defendant, or an estoppel on it to dispute its effectiveness. In view of the circumstances of this case we do not see the materiality of this fact.   He cannot be held to have received or to hold possession of this money as a representative of the Head Camp, for, in view of his limited authority, he had no power under the circumstances to so receive or hold it.   Before information or knowledge came to any officer of the Head Camp, upon which any claim of waiver or estoppel might be based, Valentine had died.   As held in *Thompson* v. *Travelers' Ins. Co.,* 11 N. D. 274, 277, [91 N. W. 75], the rights of the parties became fixed upon the death, and thereafter "no new contract between the parties by a waiver or estoppel could be created, as one of the contracting parties was dead."   Subsequent conduct could not operate so as to affect the right to

recover on the benefit certificate. This question is practically decided by what is said in *Butler* v. *Grand Lodge,* 146 Cal. 178, 179, [79 Pac. 861]. It is proper to add that it does not appear that subsequent to the death of Valentine any Head Camp officer ever did anything or said anything which could by any possibility serve as a basis for a claim of waiver or estoppel, assuming that the necessary waiver or estoppel could be based on matters occurring after the death of the insured, or upon the acts or conduct of individual Head Camp officers.

Our conclusion upon the points we have discussed renders unnecessary a discussion of many other claims of appellant. As is said by appellant's counsel in their brief, the fundamental basis upon which respondent must rest her reliance for an affirmance is that the local camp clerk was the agent of the Head Camp, with power to waive the requirements of its constitution. This basis not existing, her case must necessarily fail.

There was an attempted appeal from the order denying a new trial, but the order was not made until after the change in our law abolishing the right of appeal from such orders. The order however may be reviewed upon the appeal from the judgment. In view of what we have said, the motion for a new trial should have been granted.

The judgment is reversed.

Shaw, J., Lennon, J., Melvin, J., Wilbur, J., and Lawlor, J., concurred.